## RAILROAD COMPANY *v.* HARRIS.

1. Where a Maryland railroad corporation whose charter contemplated the extension of the road beyond the limits of Maryland, was allowed by act of the legislature of Virginia—re-enacting the Maryland charter in words—to continue its road through that State, and was also allowed by act of Congress to extend into the District of Columbia, a lateral road in connection with the road through Maryland and Virginia; *Held:* (the unity of the road being unchanged in name, locality, election and power of officers, mode of declaring dividends, and doing all its business,)

   *First.* That no new corporations were created, either in the District or in Virginia, but only that the old one was exercising its faculties in them with their permission; and that, as related to responsibility for damages, there was a unity of ownership throughout.

   *Second.* That in view of such unity the corporation was amenable to the courts of the District for injuries done in Virginia on its road.

   *Third.* That this responsibility was not changed by a traveller's receiving tickets in "coupons" or different parts, announcing that "Responsibility for safety of person or loss of baggage on each portion of the route is confined to the proprietors of that portion alone."

2. The principle of pleading that a demurrer, after several pleadings, rea . . es back to a defective declaration, has no application where the defect is one of form simply.

3. A plea in bar waives all pleas in abatement.
4. A defective declaration may be cured by sufficient averments in a replication demurred to.

ERROR to the Supreme Court of the District of Columbia, the case being thus:

On the 28th February, 1827, the State of Maryland incorporated a company known as the Baltimore and Ohio Railroad Company. It was, of course, a Maryland corporation, with capacity to sue and be sued, to take and condemn lands, subject to certain restrictions, and with the ordinary powers, rights, and privileges of corporations in that State and elsewhere. The place where the board of directors was to meet was Baltimore. There its dividends from the company's earnings were to be declared, and there was to be the seat of its government generally. It had power to make lateral roads. But the principal and declared purpose of the charter of the company, a purpose indicated by the company's name, was " the construction of a railroad from the city of Baltimore to some suitable point on the Ohio River;" a matter to do which, in a line at all direct, it was necessary to have some action of the legislature of Virginia. Accordingly the legislature of Virginia, within eight days after the legislature of Maryland had passed its act of incorporation, passed an act to " confirm" the same. The Virginia act reads thus:

" Whereas, an act has passed the legislature of Maryland, entitled 'An act to incorporate the Baltimore and Ohio Railroad Company, in the following words and figures,' viz.: (setting out the Maryland act,) Therefore be it enacted by the General Assembly, that the same rights and privileges shall be and are hereby granted to the aforesaid company, within the territory of Virginia, as are granted to them within the territory of Maryland. The said company shall be subject to the same pains, penalties, and obligations as are imposed by said act; and the same rights, privileges, and immunities which are reserved to the State of Maryland, or to the citizens thereof, are hereby reserved to the State of Virginia and her citizens, except as to making lateral roads; and that the road shall not strike the

Ohio at a point below the mouth of the Little Kanawha; that the words 'other property,' in the 17th section of the Maryland act, shall not be construed to extend to any property other than materials necessary for the road, works, and buildings; and that in procuring land and materials for the road, they shall pursue the course pointed out by the Virginia laws."

Under these acts a railroad was accordingly made between Baltimore and the Ohio River.

. Subsequently to this date, that is to say, on the 22d February, 1831, the legislature of Maryland gave the company authority to build a lateral road, from the main road between Baltimore to the Ohio, to the line of the District of Columbia. In immediate sequence, Congress passed a law by which a connection with the Capital was opened through the District. The act of Congress, which was approved March 2d, 1831, entitled "An act to authorize the extension, construction, and use of a lateral branch of the Baltimore and Ohio Railroad, into and within the District of Columbia," ran thus:

" Whereas, It is represented to this present Congress that the Baltimore and Ohio Railroad Company, incorporated by the General Assembly of the State of Maryland, by an act passed the 28th day of February, 1827, are desirous under the powers which they claim to be vested in them by virtue of the provisions of the beforementioned act, to construct a lateral branch from the said Baltimore and Ohio Railroad to the District of Columbia; therefore,

" Be it enacted, &c., That the Baltimore and Ohio Railroad Company, incorporated by the said act of the General Assembly of the State of Maryland, shall be, and they are hereby authorized to extend into and within the District of Columbia, a lateral railroad, such as the said company shall construct or cause to be constructed, in a direction towards the said District, in connection with the road they have located and are constructing from the city of Baltimore to the Ohio River, in pursuance of said act of incorporation. And the said Baltimore and Ohio Railroad Company are hereby authorized to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions *in the construction and extension of the said lateral*

*road into and within the said District,* as they may exercise or be subject to under or by virtue of the said act of incorporation in the extension and construction of any railroad within the State of Maryland, and shall be entitled to the same rights, benefits, and immunities, *in the use of said road and in regard thereto,* as are provided in the said charter, except the right to construct any lateral road or roads in said District from said lateral road."

A supplementary act of the legislature of Maryland, passed March 14th, 1832, provided that the stock issued by the company to complete this lateral road "shall, united, form the capital upon which the net profits derived from the use of *said road* shall be apportioned."

Under this act of Congress, and the act of Maryland authorizing a lateral road, a road was made from Washington to a point on the main road called the Washington Junction, not far from Baltimore, and so a complete road by rail opened from Washington to the Ohio River. At this point the Baltimore and Ohio Railroad terminated. From Belair, in Ohio, opposite this point of termination, began another road (the Ohio Central), running to Columbus. While, however, the road from Washington to the Ohio River was thus made up of two parts, one from Washington to the Junction, and one from the Junction to the Ohio River, each part, as the reader will have observed, was made in virtue of two different enactments; the former, from Washington to the Junction, by the act of Congress and the act of Maryland; the latter, or main branch, by the act of Maryland and the act of Virginia.

In this state of things, one Harris bought, at an office which the Baltimore and Ohio Railroad Company had established in Washington, a ticket with which to go to Columbus, Ohio. This ticket was made up of three coupons, one for travel between Washington City and the Washington Junction; another for travel between Washington Junction and the Ohio River, over the line of the Baltimore and Ohio Railroad, and the third and last, for travel from Belair, in Ohio, opposite the terminus of the Baltimore and Ohio Railroad, to Columbus, in Ohio, over the line of the Cen-

tral Ohio Railroad, already mentioned as confessedly discon-
nected with the Baltimore and Ohio one, except in the matter
of running junction.*

Over the first coupon was a memorandum thus:

> " Responsibility for safety of person or
> loss of baggage on each portion of the
> route is confined to the proprietors of that
> portion alone."

And each coupon had printed on it

" CONDITIONED AS ABOVE."

While travelling on the Baltimore and Ohio Railroad, at
*Mannington, in the State of Virginia,* Harris was severely in-
jured by a collision between the train in which he was so trav-
elling, and another train of the Baltimore and Ohio Railroad
Company. He accordingly brought suit against the railroad
in the Supreme Court of the *District of Columbia* for the in-
jury he had suffered. The writ was served on the President
of the Baltimore and Ohio Railroad Company. At the time
that the writ was thus served, there was no act of Congress,
authorizing suits against foreign corporations, doing business
in the District. Some time afterwards, that is to say, on
the 22d of February, 1867,† Congress enacted:

"That in actions against foreign corporations doing business in
the District of Columbia, all process may be served on the agent
of such corporation, or person conducting its business aforesaid,
or in case he is absent and cannot be found, by leaving a copy
thereof at the principal place of business of, in the District, and
such service shall be effectual to bring the corporation before
the court."

The declaration was against the company, describing it not
as a citizen, or resident, or inhabitant of the District, or of

---

\* The division of the ticket is described in a slightly different way in the
opinion, *infra,* p. 85. The Reporter describes it as he himself, perhaps erro-
neously, understood it. The matter is not important.

† 14 Stat. at Large, 404..

any State, but as " a corporation duly and legally established by law, having and professing *a legal and recognized existence, within the limits of the District of Columbia, and exercising therein corporate powers, rights, and privileges,* in the making of the *contracts,* receiving freight and passengers, for transportation in and along their said railroad, from the city of Washington to the Ohio River;" and it relied on the purchase of the ticket, and a contract in virtue thereof, to carry the plaintiff safely to the Ohio River, and the breach of the contract in what had occurred.

The company pleaded in abatement,

1st. That the company was not an inhabitant of the District of Columbia when the writ was served.

2d. That the company was not found in the District of Columbia when the writ was served.

The view of the company in their pleas apparently was, that no new corporation had been created by the act of Congress of 1831, within the District, and so made an inhabitant of it; that the old corporation by virtue of that act, did not become such an inhabitant, or found within the District, and that the court in which the action was brought had succeeded but to the jurisdiction of the Circuit Court of the District; a court in regard to whose jurisdiction it was provided by the 6th section of an act of February 27th, 1801,* identical, so far as this suit was concerned, with the 11th section of the Judiciary Act of 1789:

"That no action or suit shall be brought before said court, by any original process, against any person who shall not be an *inhabitant of,* or found within said District at the time of serving the writ."

To the first of the above-mentioned pleas, Harris replied that the company was an inhabitant of the District of Columbia, by virtue of the act of Congress already mentioned, the date and title of which he set forth, and that they had accepted its provisions, and constructed their roads under the

---

* 2 Stat. at Large, 106.

act, availing themselves of the privileges thus conferred, and doing business under it in the District of Columbia.

To the second, that the company was found within the District of Columbia when the writ was served, and was within the jurisdiction of the court, by virtue of the acts of Congress mentioned in the first replication, and that due and legal service of the writ was made upon the person of the president within the District, &c.

The company demurred to these replications, adding to the demurrer an admission of the service on the president, but denying that such service was a legal service, or service on the company. The demurrers were overruled. The company thereupon filed the general issue of Not Guilty. Upon the trial, the counsel of the company asked the court to instruct the jury that upon the evidence before them the plaintiff could not recover.

The court refused to give the instruction, and the jury having found $8250 damages for the plaintiff, the company brought the case here.

It was argued at the last term, when a re-argument was directed upon one of the points raised in the first argument, to wit:

" Whether the acts of Congress and the statutes of West Virginia, relating to the Baltimore and Ohio Railroad Company, created a new and distinct corporation under that name in the said State and District of Columbia respectively, or whether they are only enabling acts, as respected the corporation under that name, created by the State of Maryland."

*Messrs. Bradley and Buchanan, on the different arguments, for the plaintiffs in error:*

1. The instruction asked for should have been given, for this reason among others, that the declaration was essentially defective. The decisions of this court require that the averment of jurisdiction shall be positive; that the declaration shall state expressly the fact on which jurisdiction depends.*

---

* Brown v. Keene, 8 Peters, 115.

Now all that this declaration avers it could aver under the *Bank of Augusta* v. *Earle*,* though that case decided that " a corporation can have no legal existence outside of the place in which it was created; must dwell in the place of its creation, and cannot migrate to another sovereignty." For, though a non-resident corporation, it might contract, through its agents, within the District of Columbia, and thus exercise a corporate power, right, and privilege, in the making of such contracts. There is thus an absolute failure in the averment of this *narr* to state the single and necessary circumstances, essential to the jurisdiction of this court. And this defect which is reached by the demurrer, is fatal to the case of the plaintiff.

2. The company has lost none of the benefits of its pleas to the jurisdiction or its demurrer by pleading over; and if it appears, from an inspection of the whole record, either that the court below had no jurisdiction of the case at bar, or that the pleadings of the plaintiff below were so defective that the court below should have rendered judgment for the defendant, this court will reverse the judgment given.†

3. But supposing the *narr* good. Was this defendant an inhabitant of the District of Columbia, or capable of being found within it?

" If a corporation,‡ as is well settled, and is declared in words in the case of the *Ohio and Mississippi Railroad Company* v. *Wheeler*,§ can have no legal existence beyond the State or sovereignty which brings it into life," and must dwell in the place of its creation, this defendant cannot, by possibility, be an inhabitant of this District, or be found within this District, unless it can be shown that it has been *incorporated* by a law of Congress, operating within this District. Now, before a

---

* 13 Peters, 588.

† Louisville Railroad Company *v.* Letson, 2 Howard, 558; Lawson *v.* Snyder, 1 Maryland, 77; Tucker *v.* State, 11 Id. 322.

‡ Marshall *v.* Baltimore & Ohio Railroad Co., 16 Howard, 328; Covington Drawbridge Co. *v.* Shepherd, 20 Id. 233; Louisville Railroad Co. *v.* Letson, 2 Id. 558; Bank of Augusta *v.* Earle, 13 Peters, 519.

§ 1 Black, 297.

sovereignty can be said to give existence to a corporation, it must authorize such a body to have perpetual succession, to sue and be sued, implead and be impleaded, grant and receive by its corporate name, to have a common seal, to make by-laws, to have the power of amotion or removal of members. Certainly the act of Congress did not incorporate this company. Yet unless the company be incorporated in the District it cannot be sued there against its will. It is not enough that the corporation should be able to hold, control, and manage property, or possess certain privileges and powers within the District. All this may be done by an agent; it may still be a non-resident. The late case of *Day* v. *Newark India-rubber Company*\* is a case in point adverse to the right of Harris to sue the defendant in the Supreme Court of the District of Columbia. The defendant corporation was there sued in the Circuit Court for the district of New York, whose jurisdiction under the eleventh section of the Judiciary Act of 1789, is identical with that given to the Supreme Court of the District of Columbia under the act of 1801, local to the District, which regulates this case. The court relying on the cases cited by us held that there was no jurisdiction. The syllabus is thus:

" Where a manufacturing corporation, chartered by New Jersey, and having its place of business and manufactory in that State, had a store in New York, conducted by its agents, where its goods were sold, and a suit was commenced in this court by attaching the goods found in that store, and serving a summons on its president at New York, yet held that the corporation was not an inhabitant of the district of New York, or found within it at the time of serving the process."

And this view of the law is sustained by nearly every legislature in the country, as also by Congress. Certainly it has been found necessary to provide, by legislation, for giving jurisdiction, even to *State* courts, having common law powers, over foreign corporations, having agents within the State, and there exercising some of their franchises. This

---

\* 1 Blatchford, 628.

was done in Maryland by art. 75, secs. 100, 101, and 102, of the Public General Laws of that State; in Pennsylvania, by the act of 21st March, 1849; in New York, by the act of 1849, ch. 107. In other States, as in Illinois, a foreign corporation coming into the State is required by statute to enter into a stipulation that its agents shall accept service of writs issued against it.* And what shall we say of this very District of Columbia? Why was the act of February 27th, 1867, passed, authorizing service upon a foreign corporation doing business within the District, if the power to make such service was already in existence? This act of 1867 is a declaration by Congress that its act of 1831 authorizing the introduction of the railroad into the District, gave no such right against the road. But the act of 1867 was not passed till after this suit was brought.

The language of the Virginia act is very different from that of the act of Congress. It re-enacts, *totidem verbis,* the Maryland statute of incorporation. In other words it reincorporates the company; and hence in *The Baltimore and Ohio Railroad Company* v. *Gallahue,* reported in 12th Grattan,† it was decided that this act of Virginia did make the company a clear and complete Virginia corporation. The same view was taken—the question being afterwards regarded as hardly longer open to question—by the Court of Appeals of West Virginia in the subsequent cases of *Goshorn* v. *The Supervisors,*‡ and *The Baltimore and Ohio Railroad Company* v. *The Supervisors.*§ But, on the question of jurisdiction, we are not concerned with what the statute of Virginia did. The question is, did the act of Congress re-incorporate? Plainly it did not.

But if the company is incorporated within the District of Columbia, there were three distinct corporations; for if the act of Congress made a corporation in the District, the act of Virginia did, *a fortiori,* make one in Virginia. But if there were three distinct corporations, the instruction asked for ought certainly to have been given; for that corporation in

---

* See Ducat *v.* Chicago, 10 Wallace, 410.　　† Page 658.

‡ 1 West Virginia, 808.　　§ 3 Id. 319.

the District was no more responsible for the injuries which Harris sustained near Mannington, in Virginia, than it would have been had the same been sustained on the line of the Central Ohio Railroad in the State of Ohio.   The American rule is, that in the absence of special contract, each company is only liable for the extent of its own route.*

Instead of producing and proving the ticket as laid in his *narr*, the plaintiff produced a ticket consisting of three coupons, by which the liability of each company was limited to its respective route.   This was a fatal variance.

*Messrs. T. I. D. Fuller and W. D. Davidge, contra*, contended that the declaration, reasonably interpreted, and especially as helped by the replication, demurred to, and all whose allegations of fact were thus admitted, did show a *habitat;* which was all that was necessary for it to show; that whether the act of Congress and the act of Virginia created new and distinct corporations or were only enabling acts, was not, as respected the great point in the case—the right to sue the corporation in the District—a practical question, for that even though no new corporation was created in the District, still if the old corporation had a *habitat* there, that this was enough: that coming there to exercise its franchise, to take, condemn, and hold, to take land, fares and freight, to run its cars in and out, it was estopped to deny a *habitat.*

The true view of the case, the learned counsel contended, was that there was but one company and one road; though a road divided for convenience into sections; sections, however, not identical with the territories of the different sovereignties.   It had never been pretended by any one (they argued), that there was more than one company, one organization, and one set of officers.   Three distinct corporations would destroy the unity of purpose and action essential to the ends of the charter.   The charter as originally conferred by the State of Maryland, contemplated the exercise of corporate powers outside of the State, and such as were not

---

* Nutting *v.* Connecticut River Railway Company, 1 Gray, 502.

within the power of the State alone to confer. It contemplated the extension and construction of the road into two other sovereignties for its termini. And, immediately after its creation by the State of Maryland, the company applied to Congress and the State of Virginia for the privilege of extending its road into their jurisdictions, and obtained it, with the corporate right to exercise the same powers as were conferred by the parent act. But when the corporation actually came into the District or into Virginia, whether by being " enabled " or " re-incorporated " it was not the less in the place whither it had come, and having a *habitat* there it was liable to process. The broad language used by this court in *The Ohio and Mississippi Railroad Company* v. *Wheeler,* " that a corporation can have no legal existence beyond the State which created it," should be limited to the question then before the court—that of citizenship.

If the act of Congress did not re-incorporate, and if re-incorporation was necessary to give a right to sue, to what inconvenience is the suitor not exposed! The argument cannot be better put than in the language of the court in 12th Grattan.

" It would be a startling proposition if in all such cases citizens of the District and others should be denied all remedy in its courts, for causes of action arising under contracts and acts entered into or done within its territory, and should be turned over to the courts and laws of a sister State to seek redress."

Did Congress in allowing the entry into the District design this great inconvenience ?

The argument of the other side, founded on the coupons or division of the tickets, assumed that there were three separate corporations; an assumption now shown to be without foundation.

*Reply :* The argument *ab inconvenienti* in 12th Grattan was used to help out the argument, which logically or legally it cannot at all help out, that the legislature of Virginia had meant to create a new and separate corporation; the exact point decided in that case and affirmed in the two cases from

West Virgina.  It was not used to show that a corporation of one State extending its road into another, even with its leave, became liable to be sued in that other without being re-incorporated.  But the argument *ab inconvenienti* amounts to nothing.  The rule of the common law and whatever of inconvenience it has, is remediable by a statute of two or three lines, and everywhere is being remedied as corporations go into foreign States, and the necessity for a remedy arises.

What Congress *meant* to do on this particular point by its act of 1831 is a point to be settled by the language of the act, not by the suggestion of an inconvenience but fancied.  What Congress itself considered that it meant by its act of 1831, and what it considered had both been done and left undone by that act, Congress has itself declared by another act; its act of 1867.  From the last-named year, and not before, Congress declares that it meant to change the rule of the common law.  As this perhaps is the only case in the District where service on a foreign corporation has been sought for, the inconvenience has hitherto been little.  Since 1867 and for all future time it is nothing.

Mr. Justice SWAYNE delivered the opinion of the court.

This is a writ of error to the Supreme Court of the District of Columbia.

Harris sued the Baltimore and Ohio Railroad Company for injuries which he received by a collision.  The declaration sets out that the company is a corporation established by law by the name of the Baltimore and Ohio Railroad Company, having a legal and recognized existence within the limits of the District of Columbia and exercising there their corporate rights and privileges in the making of contracts and receiving freight and passengers for transportation upon their roads from the city of Washington to the Ohio River; that at the city of Washington, on the 23d of October, 1864, the plaintiff, wishing to be transported by the company over their roads to the Ohio River and towards the city of Columbus in the State of Ohio, for the sum of fifteen

dollars, paid to the company, purchased of them a ticket for a seat and passage in their cars, to be transported along their roads from the city of Washington to the Ohio River and towards the city of Columbus; that in pursuance of this contract he took his seat in one of the cars of the company; that the company, in consideration of the money so paid, undertook and promised to transport him safely to the Ohio River; that the company managed their trains so negligently and carelessly that two trains, running in opposite directions, came in collision near Mannington, in the State of Virginia, whereby the plaintiff received the injuries complained of.

The company pleaded two pleas in abatement.

(1) That the company was not an inhabitant of the District of Columbia when the writ was served. (2) That the company was not found in the District of Columbia when the writ was served.

To the first plea Harris replied that the company was an inhabitant of the District of Columbia by virtue of certain acts of Congress, the dates and titles of which are set forth, and that they had accepted the provisions of those acts and constructed their roads under them, availing themselves of the privileges thus conferred and doing business under them in the District of Columbia. To the second plea he replied that the company was found within the District of Columbia when the writ was served, and was within the jurisdiction of the court by virtue of the acts of Congress mentioned in the first replication.

The company demurred to these replications. The demurrers were overruled. The company thereupon filed the general issue of not guilty. The cause was tried by a jury and a verdict found for the plaintiff, upon which judgment was entered.

Upon the trial the counsel for the company prayed the court to instruct the jury that upon the evidence before them the plaintiff was not entitled to recover. The court refused to give this instruction, and the company excepted. Other exceptions appear by the record to have been taken, but they were not embodied in a bill of exceptions and we can-

not therefore consider them. The errors insisted upon here, at the first argument of the case, were:

The overruling of the demurrers to the replications to the pleas in abatement.

The refusal of the court to give the instruction above set forth.

And that the declaration is fatally defective, wherefore the judgment should have been arrested and must now be reversed.

When the case was first considered by this court in conference, it was found that while all the judges were of opinion that the judgment should be affirmed, there was a difference of opinion upon the question whether the acts of Congress and the statutes of Virginia relating to the company created a new and distinct corporation in the District of Columbia and in the State of Virginia respectively, or whether they were only enabling acts in respect to the corporation under the name of the "Baltimore and Ohio Railroad Company," as originally created by the State of Maryland. Subsequently the question was ordered to stand for reargument, and it has been reargued by the counsel on both sides. As the solution of this question must determine, to a large extent, the grounds upon which the judgment of the court is to be placed, it is necessary carefully to consider the subject.

The Baltimore and Ohio Railroad Company was incorporated by an act of the legislature of Maryland, passed on the 28th of February, 1827. On the 8th of March following, the legislature of Virginia passed an act whereby, after reciting the Maryland act, it was declared "that the same rights and privileges shall be, and are hereby, granted to the aforesaid company within the territory of Virginia, and the said company shall be subject to the same pains, penalties, and obligations as are imposed by said act, and the same rights, privileges, and immunities which are reserved to the State of Maryland or to the citizens thereof are hereby reserved to the State of Virginia and her citizens."

Several other statutes relating to the company were subsequently passed in Virginia, but they do not materially

affect the question under consideration, and need not be more particularly adverted to. By an act of the legislature of Maryland, of the 22d of February, 1831, the company was authorized to build a lateral road to the line of the District of Columbia. On the 2d of March, 1831, Congress passed an act which, after reciting, by a preamble, the original act of incorporation, enacted " that the Baltimore and Ohio Railroad Company, incorporated by the said act of the General Assembly of the State of Maryland, shall be, and they are hereby, authorized to extend into and within the District of Columbia a lateral railroad." . . . "And the said Baltimore and Ohio Railroad Company are hereby authorized to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions in the construction and extension of the said lateral road into and within the said District as they may exercise or be subject to under or by virtue of the said act of incorporation in the extension and construction of any railroad within the State of Maryland, and shall be entitled to the same rights, benefits, and immunities in the use of said road and in regard thereto as are provided in the said charter, except the right to construct any lateral road or roads in said District from said lateral road." A number of local regulations follow, which are not material to be considered. A supplementary act of the legislature of Maryland, passed March 14th, 1832, provided that the stock issued by the company to complete this lateral road " shall, united, form the capital upon which the net profits derived from the use of said road shall be apportioned," &c.

The act of Congress of February 26th, 1834, and of March 3d, 1835, are confined to matters of detail, and may be laid out of view.

When the case was reargued as directed by this court, the counsel for the company admitted that the acts of Congress in question were only enabling acts, and that they did not create a new corporation, but they insisted that the acts of Virginia were of a different character, and that they worked that result.

As regards the point under consideration we find no substantial difference. In both the original Maryland act of incorporation is referred to, but neither expressly or by implication create a new corporation. The company was chartered to construct a road in Virginia as well as in Maryland. The latter could not be done without the consent of Virginia. That consent was given upon the terms which she thought proper to prescribe. With a few exceptions, not material to the question before us, they were the same as to powers, privileges, obligations, restrictions, and liabilities as those contained in the original charter. The permission was broad and comprehensive in its scope, but it was a license and nothing more. It was given to the Maryland corporation as such, and that body was the same in all its elements and in its identity afterwards as before. In its name, locality, capital stock, the election and power of its officers, in the mode of declaring dividends, and doing all its business, its unity was unchanged. Only the sphere of its operations was enlarged.

In what it does in Virginia the same principle is involved as in the transactions of the Georgia corporation in Alabama, which came under the consideration of this court in *The Bank of Augusta* v. *Earle.** The distinction is that here the assent of the foreign authority is express, while there it was implied. A corporation is in law, for civil purposes, deemed a person. It may sue and be sued, grant and receive, and do all other acts not *ultra vires* which a natural person could do. The chief point of difference between the natural and the artificial person is that the former may do whatever is not forbidden by law; the latter can do only what is authorized by its charter. It cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there it will be presumed to have assented and will be bound accordingly.† For the

---

purposes of Federal jurisdiction it is regarded as if it were a citizen of the State where it was created, and no averment or proof as to the citizenship of its members elsewhere will be permitted. There is a presumption of law which is conclusive.* ·

We see no reason why several States cannot, by competent legislation, unite in creating the same corporation or in combining several pre-existing corporations into a single one.. The Philadelphia, Wilmington, and Baltimore Railroad Company is one of the latter description. In the case of that company against Maryland,† Chief Justice Taney, in delivering the opinion of this court, said: "The plaintiff in error is a corporation composed of several railroad companies, which had been previously chartered by the States of Maryland, Delaware, and Pennsylvania, and which, by corresponding laws of the respective States, were united together and form one corporation, under the name and style of The Philadelphia, Wilmington, and Baltimore Railroad Company. The road of this corporation extends from Philadelphia to Baltimore." He gives the history of the legislation by which this result was produced. No question was raised on the subject, but the opinion assumes the valid existence of the corporation thus created. The case was brought into this court under the 25th section of the Judiciary Act of 1789. The jurisdictional effect of the existence of such a corporation, as regards the Federal courts, is the same as that of a copartnership of individual citizens residing in different States. Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *qua ad hoc* any property within its territorial jurisdiction. That this may be done was distinctly held in *The Ohio and Mississippi Railroad Co.* v. *Wheeler.*‡ It is well settled that corporations of one State may exercise their faculties in an-

---

* Louisville, Cincinnati & Charleston Railroad Co. *v.* Letson, 2 Howard, 497 ; Marshall *v.* The Baltimore & Ohio Railroad Co., 16 Id. 329 ; Ohio & Mississippi Railroad Co. *v.* Wheeler, 1 Black, 297.

† 10 Howard, 392.                                    ‡ 1 Black, 297.

other, so far, and on such terms, and to such extent as may
be permitted by the latter.* We hold that the case before
us is within this latter category. The question is always
one of legislative intent, and not of legislative power or
legal possibility. So far as there is anything in the language
of the court in the case of *The Ohio and Mississippi Railroad
Co.* v. *Wheeler*, in conflict with what has been here said, it is.
intended to be restrained and qualified by this opinion. We
will add, however, that as the case appears in the report, we
think the judgment of the court was correctly given. It
was the case of an Indiana railroad company licensed by
Ohio, suing a citizen of Indiana in the Federal court of that
State.

In *The Baltimore and Ohio Railroad Co.* v. *Gallahue's Ad-
ministrator*, 12 Grattan,† it was held by the Court of Appeals
of Virginia that the company was suable in that State. In
this we concur. We think this condition is clearly implied
in the license, and that the company, by constructing its
road there, assented to it. The authority of that case was
recognized by the Court of Appeals of West Virginia, in
*Goshorn* v. *The Supervisors*,‡ and in *The Baltimore and Ohio
Railroad Co.* v. *The Supervisors et al.*§ Here the question is
whether the company was suable in the District of Columbia.
In the case reported in Grattan, it was said : "It would be
a startling proposition if in all such cases citizens of Virginia
and others should be denied all remedy in her courts, for
causes of action arising under contracts and acts entered
into or done within her territory, and should be turned over
to the courts and laws of a sister State to seek redress."
The same considerations apply to the case before us. When
this suit was commenced, if the theory maintained by the
counsel for the plaintiff in error be correct, however large
or small the cause of action, and whether it were a proper
one for legal or equitable cognizance, there could be no
legal redress short of the seat of the company in another

---

* Blackstone Manufacturing Co. *v.* Inhabitants, &c., 13 Gray, 489; Bank
of Augusta *v.* Earle, 13 Peters, 588.
† Page 658.        ‡ 1 West Virginia, 308.          § 3 Id. 819.

State. In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility. It is not to be supposed that Congress intended that the important powers and privileges granted should be followed by such results.

But turning our attention from this view of the subject and looking at the statute alone, and reading it by its own light, we entertain no doubt that it made the company liable to suit, where this suit was brought in all respects as if it had been an independent corporation of the same locality.

We will now consider, specifically, the several objections to the judgment, relied upon by the plaintiffs in error.

The pleas in abatement were bad. The demurrers reached back to the first error in the pleadings, and judgment was properly given against the party who committed it. If the replications were bad, bad replications were sufficient answers to bad pleas. But it is said the declaration was bad, and that the demurrers brought the defect in that pleading under review. The principle has no application where the defect is one of form and not of substance.* ·

The alleged defect in the declaration will be considered in connection with the error assigned relating to that subject. But if the court decided erroneously, the company waived the error by pleading over in bar. If it were desired to bring up the judgment upon the pleadings for examination by this court the company should have stood by the demurrers. In the proper order of pleading which is obligatory a plea in bar waives all pleas, and the right to plead, in abatement.†

The bill of exceptions which brought upon the record the refusal of the court to instruct the jury that the plaintiff was not entitled to recover, exhibits, among others, the following facts: Harris contracted, paid his money, and received his

---

* Aurora City *v.* West, 7 Wallace, 82.

† Young *v.* Martin, 8 Wallace, 354; Aurora City *v.* West, 7 Id. 92; Clearwater *v.* Meredith, 1 Id. 42; 1 Chitty's Pleading, 440, 441.

tickets at the city of Washington.   The tickets consisted of three coupons—one for his passage from Baltimore to Columbus, Ohio; another for his passage from Washington Junction to Baltimore, and the third for his passage from Washington City to Washington Junction.   It is necessary to consider only the two last mentioned.   They are both headed "Baltimore and Ohio Railroad," and signed "L. M. Cole, general ticket agent."   Above the coupon first mentioned is this memorandum: "*Responsibility for safety of person or loss of baggage on each portion of the route is confined to the proprietors of that portion alone.*"   Each coupon has printed on its face the words "Conditioned as above."   The coupon last mentioned gave Harris the right of passage over the lateral branch both in the District of Columbia and in Maryland.   The second coupon gave him the same right in respect to the main stem both in Maryland and in Virginia.

The instruction asked for assumed erroneously that there were two corporations under the same name, one of them in Virginia, and that the latter was liable and alone liable to the plaintiff.   The attempted limitation of responsibility by the memoranda at the head and on the face of the coupons proceeded upon the same erroneous assumption as to the duality of the corporate ownership of the roads.

These views are sufficiently answered by what has been already said upon the subject.   But if we concurred with the counsel for the plaintiff in error, we should then hold that the agent who issued the coupons was the agent of both corporations; that the contract was a joint one; and that it involved a joint liability, unless the knowledge of the memoranda on the coupons and the assent of the plaintiff were clearly brought home to him.*   In all such cases the burden of proof rests upon the carrier.†   The bill of exceptions does

---

* Bissell v. Michigan S. & Northern Indiana Railroad Co., 22 N. Y., 258; Champion v. Bostwick, 18 Wendell, 175; Cary v. Cleveland & Toledo Railroad Co., 29 Barbour, 85; Quimby v. Vanderbilt, 17 N. Y. 306; Najac v. Boston & Lowell Railroad Co., 7 Allen, 329; The Great Western Railway Co. v. Blake, 7 Hurlstone & Norman, 987.

† New Jersey Steam Nav. Co. v. The Merchants' Bank, 6 Howard, 383; Brown v. Eastern Railroad Co., 11 Cushing, 97; Bean v. Green et al., 3

Syllabus.

not show that any testimony was given upon that subject. The court was asked to assume that the limitation on the face of coupons was itself conclusive, and to instruct the jury accordingly. But having held the unity of the corporation, of the proprietorship of the roads, and of the contract, it is needless further to consider the case in this aspect. The instruction asked for was properly refused.

The jurisdiction of the court was not governed by the 11th section of the Judiciary Act of 1789. It did not depend upon the citizenship of the parties. It was controlled by acts of Congress local to the district. A citizen of the district cannot sue in the Circuit Courts of a State.* If a corporation appear and defend in a foreign State it is bound by the judgment.† If the declaration were insufficient, the additional averments in the replications admitted by the demurrer to be true, cured the defect.‡

JUDGMENT AFFIRMED.

Fairfield, 422; Dorr *v.* The New Jersey Steam Nav. Co., 4 Sandford, 136; S. C, 1 Kernan, 485.

\* Hepburn *v.* Ellzey, 2 Cranch, 445.

† Angel & Ames on Corporations, § 404, 405; Flanders *v.* Ætna Ins. Co., 3 Mason, 158; Cook *v.* The Champlain Transportation Co., 1 Denio, 98.

‡ Lafayette Insurance Co. *v.* French, 18 Howard, 405.