STATE, LEHIGH VALLEY RAILROAD COMPANY, PROSE-CUTOR, v. MUTCHLER, COLLECTOR OF THE TOWN OF PHILLIPSBURG.

1. The railroads with respect to which the taxation provided for by the railroad taxation acts of 1873 and 1876 (*Rev.*, pp. 1166–1168,) is imposed, are such as were constructed by corporations of this state—domestic corporations holding their corporate franchises under charters granted by the legislature of this state.

2. The Lehigh Valley Railroad Company was incorporated by the legislature of Pennsylvania, for the purpose of constructing a railroad in that state. To enable the company to reach the sea-board by means of connection with railroads in New Jersey, the legislature of Pennsylvania gave it the power to construct a bridge across the Delaware river, provided that a concurrent law, to the same effect, should be passed by the legislature of New Jersey. By the treaty between the two states, of 1783, (*Rev.*, p. 1181,) the consent of both states is necessary to authorize the erection of a bridge over the Delaware. The legislature of New Jersey passed a concurring act, authorizing the erection of the bridge. *Held*, that the company did not thereby become a railroad company, within the meaning of the railroad taxation acts; that it was not taxable in the manner provided for in those acts, nor entitled to the exemption from taxation therein created, and that it was taxable on so much of its bridge as is in the State of New Jersey, under the general tax law of the state.

---

On *certiorari*. In matter of taxation.

State, Lehigh Valley R. R. Co., pros., v. Mutchler.

Argued at June Term, 1880, before Justices DEPUE, SCUD-DER and KNAPP.

For the plaintiff, *Oscar Keen.*

*Contra, S. E. Smith.*

The opinion of the court was delivered by

DEPUE, J.   The prosecutor was taxed in the town of Phillipsburg for state, county, and municipal purposes, for that part of its bridge over the Delaware river which is east of the middle line of the river, and is in the State of New Jersey.   *State* v. *Metz,* 5 *Dutcher* 122.

The main bridge extends from the Pennsylvania shore to the New Jersey shore, and is supported by five piers placed in the river.   Besides the main bridge, there is a branch extending from the New Jersey shore to the second pier, where it connects with the principal structure.   This branch was built at the cost of the Easton and Amboy Railroad Company, a corporation of this state created by acts of the legislature passed in 1872, (*Pamph. L., pp.* 314–317,) and is part of the stem or main line of that company's railroad.   It does not exceed one hundred feet in width.   This part of the bridge is not taxable as against the prosecutor.   It is a subject of taxation as against the Easton and Amboy Railroad Company, in the manner prescribed by the act of April 2d, 1873, (*Rev., p.* 1166,) and by force of that act, is not taxable in the town of Phillipsburg for state, county, or municipal purposes.   *State, Central R. R. Co., pros.,* v. *Mutchler,* 12 *Vroom* 96.

The real controversy is with respect to that portion of the main structure of the bridge which lies between the middle line of the river and the New Jersey shore.   This part of the bridge was built by the prosecutor, at its own cost, and is its property, and forms part of its railroad, and is used as part of its line for the purposes of a connection with the railroads of the New Jersey Central and Morris and Essex Railroad Companies.   It is less than one hundred feet in width.

The proposition which enters into the decision of this case

is whether the prosecutor is a railroad company within the meaning of the two acts of the legislature which provide for the method of taxation of railroad corporations, the one passed April 2d, 1873, the other, April 13th, 1876. *Rev., pp.* 1166–1168. These two statutes, although they were passed under distinct titles, are parts of the same legislation, the one of the later date being, in effect, a supplement to the earlier act. If the prosecutor be considered a railroad company, within the meaning of these acts, it is liable to taxation in the manner directed by these acts, and the tax now under review was illegally laid. If the prosecutor be not a railroad company, such as is liable to the taxation provided for by these acts, it is subject to taxation upon this property, under the general tax law, and the tax under review was legally imposed. For I take it to be a proposition of undoubted soundness, that the prosecutor's bridge is property liable to taxation, in common with the property in this state, of individuals and of other corporations, on which tax is to be laid, under the general tax law, unless it be such a corporation as is taxable under the acts of 1873 and 1876, and, because liable to taxation under these acts, is exempt from taxation under the general tax law. If there be any exemption of this property from taxation, such as property in this state is subject to under the general tax law, such exemption is the creation of the acts of 1873 and 1876, and will apply only to such property and in favor of such corporations as are taxable under those acts.

The prosecutor was incorporated by an act of the legislature of Pennsylvania, under the name of the Delaware, Lehigh, Schuylkill and Susquehanna Railroad Company. The substantial purpose of its incorporation was the construction of a railroad in the State of Pennsylvania. Its capital stock, amounting to several millions of dollars, has been invested in building a considerable line of railroad in that state. To enable the company to reach the sea-board by means of connections with railroads in New Jersey, the legislature of Pennsylvania gave it the additional power to con-

struct a bridge across the Delaware river. By the treaty between the States of New Jersey and Pennsylvania, of 1783, (*Rev., p.* 1181,) the consent of the two states is necessary to authorize the erection of a bridge over the Delaware. *President, &c.,* v. *Trenton City Bridge Co.,* 2 *Beas.* 46 ; *Attorney-General* v. *D. & B. B. R. R. Co.,* 12 *C. E. Green* 631. The act of the Pennsylvania legislature, therefore, contained a proviso making it a condition that a concurrent law should be passed by the legislature of New Jersey. On the 11th of March, 1850, an act was passed by the legislature of New Jersey, entitled " An act to authorize the Delaware, Lehigh, Schuylkill and Susquehanna Railroad Company to build a railroad bridge across the Delaware river, at or near Easton." It recited in its preamble the act of the legislature of Pennsylvania, and enacted, *in totidem verbis,* that it should be lawful for the said Delaware, Lehigh, Schuylkill and Susquehanna Railroad Company to erect a railroad bridge across the river, at or near Easton, to be used for railroad purposes only. *Pamph. L., p.* 313. The act of 1850, in its language, does not import a grant of franchises. It was simply an act concurrent with that of the legislature of Pennsylvania, consenting to the erection of the bridge and legalizing its construction, but did not create the prosecutor a corporation of this state. This view of the legal effect of an act of the legislature of one state conferring limited powers on a corporation created by the act of the legislature of another state, is in accordance with the opinions of Green, C. J., in *Phillipsburg Bank* v. *Lackawanna R. R. Co.,* 3 *Dutcher* 206, and Shaw, C. J., in *Blackstone Manufacturing Co.* v. *Inhabitants, &c.,* 13 *Gray* 488, and is sustained by the decision of the Supreme Court of the United States, in *Railroad Co.* v. *Harris,* 12 *Wall.* 65.

An examination of the railroad taxation acts of 1873 and 1876 will clearly show that the railroads with respect to which the taxation provided for by those acts is imposed, are such as were constructed by corporations of this state—domestic corporations holding their corporate franchises under charters granted by the legislature of this state. The main purpose

State, Lehigh Valley R. R. Co., pros., v. Mutchler.

of the legislature, in this scheme of taxation, was taxation on railroads—the road-bed structure and appendages—which generally constitute the larger part of the investments of companies of that class. Incidentally and for the purpose of a valuation on which the tax is to be laid, the rolling stock with which the road is operated, and belonging to such company as uses or occupies the railroad, is included as the equipment of the railroad. But that the revenue expected to be derived by this taxation, was chiefly that which would arise from the taxable valuation of the railroad itself, is obvious.

These acts, in recitals, structure, and in the methods provided for collecting the tax, plainly show that the railroads contemplated by the legislature were such as were constructed by corporations of this state. The preamble to the act of 1876 refers to the fact that the "laws creating and regulating railways in this state, usually provide for the payment, by them, in consideration of their chartered privileges, of a fixed ratio upon their capital stock, or the costs of their works, in lieu of all other public impositions whatever." The preamble to the ninth section recites that "certain corporations owning or occupying railroads in this state claim exemption from all taxation, * * * further than is provided for by their charters, or by special laws for their benefit," and refers to the public ill-will existing, which should "make it their interest to forego the same, and agree to the scheme of taxation thereby established." The facts referred to in these preambles are matters well known in the history of legislation in this state, and have no pertinency except to our own legislation, for the legislature of this state would be under no obligation to respect—certainly would not be concluded by—acts of legislatures of other states, in matters of taxation on property in this state.

The first section of the act of 1873 requires the payment "upon the cost, equipment, and appendages of said railroads, respectively, of a state tax, after such rate of taxation as may have heretofore been fixed by law upon such companies, or, in default thereof, at the rate of one-half of one per centum

upon such cost," a provision which was changed, by the act of 1876, to " an annual state tax upon the true value of said railroads, the equipment and appendages of said roads, at and after the rate of one-half of one per centum upon such value, * * * notwithstanding any provisions in the charters of said corporations or companies, or the laws under which said railroads are respectively occupied and used, fixing a different basis, mode, or rate of taxation." By other sections, the officers of the corporation or company are required, by a certain designated day in each year, to make return, under oath, to the comptroller of the state, of the true value of the road, equipment, and appendages, and their cost. The tax, when assessed, becomes a lien on the franchises and property, real, personal, and mixed, of said corporation or company, prior to all other liens on the same, and a sale for the collection of such tax is made to pass the absolute title to said franchises and property, free and clear of all encumbrances thereon.

These provisions leave no doubt as to the class of corporations with which the legislature was dealing—domestic corporations whose charters might contain provisions on the subject of taxation, and whose franchises are amenable to a sale and conveyance for the collection of the tax.

The prosecutor is not a corporation of this class. It is a foreign corporation. If its charter contains any provision on the subject of taxation, the legislature of this state is not presumed to have legislated with regard to such special provision. The franchises of the prosecutor are the creature of legislation in another state, and are not amenable to sale by virtue of any process under our laws. All the prosecutor has in this state is a legislative consent, under the treaty of 1783, to the construction of the bridge, a license which legalized its erection for the purpose mentioned in the act.

The tax should be reversed as to that part of the bridge which is part of the road-bed of the Easton and Amboy Railroad Company, but as to the residue, should be affirmed, without costs on either side.