## MORGAN *et al. v.* EAST TENNESSEE & V. R. Co.

*(Circuit Court, N. D. Georgia.* March Term, 1883.)

**REMOVAL OF CAUSES—CITIZENSHIP OF RAILROAD CORPORATIONS.**

When a railroad charter gives the company a right to sell its road within the state to any company incorporated by another state, the purchasing company to have "all the rights and privileges" of the seller, a non-resident company, which purchases the road to form an extension of its line, does not thereby become a resident corporation, so as to take away its right to remove a cause from the state to a federal court.

On Motion to Remand to the state court from which the cause was removed. Motion refused.

*W. H. Dabney* and *R. T. Fouche,* for the motion.

*J. W. H. Underwood,* opposed.

McCAY, J. This was a suit commenced in the superior court of Floyd county, Ga., against the Virginia & East Tennessee Railroad Company, and upon the petition of the defendant, claiming that it was a corporation of the state of Tennessee, had been removed to this court for trial. Plaintiff now moves to remand the case, on the ground that the defendant, though a corporation of Tennessee, is also a corporation of Georgia, and that this court has no jurisdiction of the controversy, since the parties are all citizens of Georgia. The question turns upon the following facts: The defendant was incorporated by the legislature of Tennessee, with authority to build and operate a railroad from Cleveland, Tenn., to the Georgia line, and to extend its road to Dalton, Ga., by consent of the Georgia authorities. By various acts of the legislature of Georgia this privilege was granted, and the road built, but no expressed corporate rights in Georgia were by these acts conferred. The company got the right to extend and operate its road to Dalton on certain conditions, and, so far as this extension of the original road to Dalton is concerned, the right of the company has always been so treated. In 1874 or 1875 a railroad extending from Dalton, Ga., to Selma, Ala., known as the "Selma, Rome & Dalton Railroad," was sold under due process of law for the benefit of its creditors, and was bought by certain persons, who afterwards, so far as that portion of the road lying in Georgia is concerned, were incorporated under the name of the "Southern Railroad Company of Georgia." One of the provisions of this charter was as follows:

"Sec. 6. That the said company shall have power to lease or sell their property within the state of Georgia to any other railroad company within the state of Georgia, and also to such railroad companies of other states as, by the laws of such state, may be so authorized, and upon such terms as may be agreed upon by the board of directors and approved by a majority in interest of the stockholders of this company; and the said company so leasing or buying shall have and possess all the rights and privileges of this company."

Under this section of the charter the company sold that part of the Selma, Rome & Dalton Railroad lying in Georgia to the East Tennessee

& Virginia Railroad Company, which has been, and now is, in posses-
sion of and engaged in operating said road. It may be added in ex-
planation of the situation that this road from Dalton through Rome to the
Alabama and Georgia line is in direct extension of the original road of
the East Tennessee & Virginia Railroad Company from Cleveland to
Dalton. It is contended by the counsel for plaintiffs that, under these
circumstances, the defendant is a Georgia corporation, and has, there-
fore, no right to remove the suit to this court. It is admitted that
under the laws of Tennessee the East Tennessee & Virginia Railroad
Company was authorized to make the purchase of this road, so that at
last the question depends upon the construction to be given to the sixth
section of the act incorporating the Southern Railroad Company of Georgia,
and giving it special power to sell its property, and declaring that the pur-
chasers shall have all the rights and privileges of the Southern Railroad
Company of Georgia. It is claimed that this section, not only by rea-
son of the nature and object of it, but by its expressed terms, casts
upon the East Tennessee & Virginia Railroad Company corporate rights
in the state of Georgia, and that the defendant is therefore a citizen of
Georgia, and the case not removable. Nothing is better settled than
that a grant to a corporation is to be strictly construed; that it takes
nothing by any legislative act except what was expressly granted. If
this be true of grants to a corporation, it would seem to be more em-
phatically true of the grant of corporate rights. If, therefore, by a fair·
construction of this sixth section of the charter of the Southern Railroad
Company of Georgia, its terms · are fairly covered without including in
it the right of the purchasing company to be a corporation, then the
corporate right is not granted. Suppose the purchase had been by
some Georgia railroad, acting under a Georgia charter, could it for a
moment be contended that the Georgia company would become a new
corporation? Suppose, again, this Georgia Southern Railroad Company
of Georgia had only leased the East Tennessee & Virginia Railroad its
road, would·the Georgia Southern cease to exist as a company, and the
East Tennessee have its chartered rights? ·The words used in this section
are to be taken altogether. The Southern Railroad Company of Georgia
is authorized to sell or lease its property, not its corporate existence; and
the latter words are to be construed in reference to the former. The
purchasers are to get all the powers and privileges the old company has
over its property,—the thing sold, and the only thing it had a right to
sell. Now, the corporation of another state may, by the consent of the
legislature, under a license, enjoy any kind of property or franchise
without becoming a corporation. It may own land, construct railroads,
carry on the business of a common carrier, make contracts of insur-
ance, and do almost any conceivable legal act which the legislature may
license it to do. In the numerous sales of railroads under chancery de-
crees nothing is sold but the property. The corporate right is not the
subject of sale. Such a right—the right to be a corporation—depends
upon the legislative will, and is not to be sold or mortgaged, except by
legislative consent. And this distinction between the property rights

of the corporation and its corporate existence is clear, and well recognized by all writers on corporation law; and this view is sustained by the highest authorities. In *Railroad Co.* v. *Harris*, 12 Wall. 65, the supreme court of the United States held that an act of the legislature of Virginia granting to the Baltimore & Ohio Railroad Company the same rights and privileges in Virginia as were granted it by its Maryland charter did not make it a corporation; that it had only a license to do such acts in Virginia as it had a right to do in Maryland. And in the same case it appeared congress had granted to the Baltimore & Ohio Railroad the right to build a branch in the District of Columbia, with the same rights, benefits, and immunity as were **provided** by its Maryland charter, and the court held even this not to **be a** grant of corporative authority, but only a license to do in the District such acts as it might do under its charter in Maryland. The same doctrine is laid down by District Judge KEY, May, 1882, in Middle Tennessee. *Callahan* v. *Railroad Co.*, 11 Fed. Rep. 536. This question is also, I think, essentially involved in the case of *Railroad Co.* v. *Koontz*, 104 U. S. 5. In that case a Maryland corporation had leased and was operating a Virginia railroad under a contract, without any legislative authority from either state. The Maryland company was sued in Virginia, and undertook to remove the case to the United States circuit court. This the Virginia court refused, on the ground that, as this Maryland company was exercising rights of a corporation in Virginia, it was to be treated as a Virginia corporation; and this ruling was approved by the Virginia supreme court, and by writ of error was carried to the supreme court of the United States for review. That court said the matter stood on the same footing as if there was legislative authority for the lease, since the state had not complained, and it in terms decided that, while the Maryland company was without doubt suable in Virginia, yet as it still was not a Virginia, but a Maryland, corporation, it had a right to remove its cause, under the act of congress, to the federal court. The case of *Railroad Co.* v. *Cary*, 28 Ohio St. 208, is to the same effect, and I am unable to see why, on principle, a law of a state granting to a foreign corporation the right, privilege, and immunity to operate a railroad makes the grantee any more a citizen of the state than does a law authorizing a foreign corporation to make other contracts or do other acts as home corporations may, or as citizens may, which is the law, expressed or implied, of almost all contracts in all the states of the Union, and is true by comity, even as regards foreign corporations proper, over almost all the civilized world. I am therefore of the opinion that the motion to remand must be denied, and the case stand for trial in its proper order on the docket of this court.