23055.   PERE MARQUETTE RAILWAY COMPANY *v.*
TIFTON PRODUCE COMPANY.

DECIDED JANUARY 23, 1934.

*N. F. Crawford, R. D. Smith,* for plaintiff in error.

*Robert R. Forrester,* contra.

BROYLES, C. J.  Tifton Produce Company sued out an attachment against the Pere Marquette Railway Company, for the sum of $210, returnable to the superior court of Tift county, Georgia, the attachment alleging that the Pere Marquette Railway Company is a nonresident of the State of Georgia.  The attachment was served by service of summons of garnishment on several corporations, some of which answered, admitting indebtedness to the Pere Marquette Railway Company.  Thereafter the Tifton Produce Company filed its declaration in attachment against the railway company, service being acknowledged by its counsel.  The declaration alleged that the Pere Marquette Railway Company, a corporation and common carrier, was indebted to petitioner in the sum of $210 principal, and interest from June, 1930, by reason of the following facts:  That prior to June, 1930, petitioner held two claims against defendant; that each of said claims arose by reason of a claim for damages on account of delay in the transportation of watermelons shipped from points in the State of Georgia, under bills of lading issued in the State of Georgia, to petitioner, petitioner being domiciled in the State of Georgia on the date of said shipment and from said date to the date of filing of the attachment; that the two carloads of melons were handled by defendant as follows:  Sou. 28490 for $282.79 and being claim 29 M 68, and Sou. 120487 for $282.62, and being claim 29 M 55; that prior to June, 1930, petitioner and defendant agreed on "a compromise adjustment of both of said claims for the sum of $410, it being understood however that said aggregate sum should be distributed and prorated in such manner as defendant selected.  Defendant

elected to apply said amount of damages as follows: $200 to Sou. 28490, $210 to Sou. 120487; that thereafter defendant paid to petitioner the sum of $200 to be applied to car No. Sou. 28490, leaving a balance due under said agreed settlement in the sum of $210 as hereinbefore set out, your petitioner having accepted said amount by reason of said agreed adjustment, and to said extent said oral agreement having been partially performed."

The Pere Marquette Railway Company filed its motion to dismiss the attachment and at the same time filed its plea to the jurisdiction of the superior court. Counsel for both parties agreed that the trial judge should determine both issues of fact and of law and decide the questions of law raised by such motion to dismiss and plea to the jurisdiction. H. L. Cartwright, a witness for, and president of, the Tifton Produce Company, substantiated by his evidence all of the material allegations of the declaration, he swearing in part that "plaintiff and defendant negotiated for a settlement of said claims, and that as a result of said negotiations plaintiff agreed with one P. A. Taylor, who represented said defendant in the adjustment of claims, on a compromise settlement thereof. The agreement reached was that defendant should pay to plaintiff the sum of $410 to cover the loss in both of said claims, defendant reserving the right to prorate the said amount as he saw fit so that the amount of payment agreed upon should be $410. That thereafter defendant paid to plaintiff the sum of $200 to be applied to said agreed settlement; that there is now due to plaintiff the sum of $210 principal, besides interest from the date of said agreed compromise settlement; . . that subsequent to the date of said agreed settlement he was advised by said P. A. Taylor that he had severed his connection with defendant; that said P. A. Taylor was the only representative of said defendant who had knowledge of said agreed amount of settlement."

Norman F. Crawford, attorney for the Pere Marquette Railway Company, testified, by affidavit, that he had knowledge of the facts pertaining to this matter; that defendant contends that no compromise agreement was made, and denies that Taylor is the only witness whose presence would be necessary in the trial, and defendant says that even if there were a compromise agreement, no legal liability exists, in that under the provisions of the Interstate Commerce Act, which prevents discrimination in favor of any shipper,

the defendant and the other carriers who handled the consignments are precluded from paying the claim. Deponent further stated that in order for defendant to show that no liability exists it will be necessary for it to produce the testimony of numerous witnesses and records to show the complete movement of the shipment involved, which would unreasonably interfere with the operation and efficiency of defendant's railroad in the State of Michigan.

The court passed an order overruling the motion to dismiss the attachment and the plea to the jurisdiction of the court, and the defendant assigns error on those judgments.

The greater portion of the testimony (by affidavit) of the sole witness for the railway company deals with what the defendant *contends* and *denies,* and with the law, rather than with actual facts. However, had the testimony of this witness been in direct conflict with that of the plaintiff, the court, under the agreement of counsel that the judge should pass upon the issues without the intervention of a jury, could, and evidently did, accept the testimony of the plaintiff, and its finding is supported by the evidence. The testimony for the plaintiff showed that the defendant railway company made a compromise agreement to pay the plaintiff $410, and that one Taylor was the only witness for the defendant company who knew about the agreement; and the court accepted these facts as true in determining the issues raised and the jurisdiction of the court.

We do not think that a trial of the issues raised by the pleadings would appreciably interfere with interstate commerce. The court had the right to determine the facts, and the plaintiff proved to the satisfaction of the court that its action was based upon a compromise agreed upon and partially carried out. This being true, the only witness necessary to be called by the defendant railway company was the officer or agent who represented it in making the compromise agreement. Even if this one witness was still connected with the defendant company, his presence at the trial in Georgia would cause little inconvenience to interstate commerce, and if he is no longer connected with the defendant company, as indicated by the evidence, his presence at the trial would in no way interfere with the defendant's interstate operations.

The cases cited by plaintiff in error are differentiated by their facts from the instant case. In the case at bar the plaintiff did not

change its residence to gain an advantage as to jurisdiction. It was a resident of Georgia at the time of the issuance of the bills of lading, at the time of the compromise agreement, and at the time of the filing of the declaration in attachment. "A compromise or mutual accord and satisfaction is binding on both parties," according to Georgia law (Civil Code (1910), § 4330), and the plaintiff resorted to the remedy provided by Georgia law, viz. attachment, since "the debtor resides out of the State." Civil Code (1910), § 5055. We agree with the ruling of the trial judge in his order (overruling the motion to dismiss the petition for want of jurisdiction), which is in part as follows: "It was agreed by and between counsel representing the parties litigant, with the consent of the presiding judge, that the matter be submitted to the court for determination of the question of jurisdiction; the defendant having moved for a dismissal. . . Evidently for the purpose of the motion or general demurrer the defendant in the case has admitted the properly pleaded allegations of the petition. Very plainly the plaintiff is seeking to recover under an alleged compromise or mutual accord and satisfaction binding on both parties, as provided for in section 4330 of Park's Code of Georgia. This being true, it is evident that this is not an ordinary suit against a terminal carrier for damages or breach of contract of carriage; in fact it is stated in the petition, that there was a definite compromise for a fixed amount and the payment of a portion thereof. We are aware of the rulings of the United States court in the cases of D. & R. G. W. v. Terte, 284 U. S. page 284 [52 Sup. Ct. 152], and Michigan Central v. Mix, 278 U. S. 492 [49 Sup. Ct. 207], and other cases of like character; but it is the opinion of this court that the rules therein laid down do not and should not apply to a state of facts similar to those now before us. If a railroad company, as a matter of fact, has entered into an accord and satisfaction, and has carried out the same to the extent of making a part settlement, the breach of contract of carriage or suit for damages is no longer involved. It has become a liquidated demand; and what reason is there why a resident of Georgia, the holder of a note or other obligation or claim such as this, should go beyond the State of his residence for the purpose of enforcing the demand, merely because the debtor happens to be a nonresident railroad corporation? Surely, when property of the debtor is found within

the limits of the State and the creditor is the holder of a liquidated demand, there is no apparent reason why he should not make an effort to collect through attachment or other legal means. . . The rule and the reason [for not bringing damage suits against carriers of freight, in states where they operate no line of railroad or maintain no office except for solicitation of traffic] do not apply in cases where the debtor has adjusted the claim and left a balance due outstanding against it. Certainly the production of the representative of the company who acted for the company in the accord and satisfaction as a witness in the case would entail no great hardship on the part of the debtor. Apparently it would in no way disturb the public nor disarrange the schedules of the common carrier. To be sure, we are not now finally determining the validity of the alleged agreed balance, but merely holding that this case should go to a jury in this jurisdiction for the purpose of then and there determining the question 'did the company make the settlement, and bind itself by the accord and satisfaction?' If so, the plaintiff should be allowed to go his way to the collection of his debt. If the plaintiff fails to establish the liability by a preponderance of evidence sufficient to satisfy the trial jury, then he loses his case; in no event may he transmute the action into one for the recovery of damages or for breach of contract; his case is based on an accord and satisfaction, and on that he must stand or fall."

The U. S. Code, title 49, par. 20, sec. 11, as amended April 23, 1930, in 46 U. S. Statutes, c. 208, pp. 251, 252, cited by plaintiff in error, and providing that "all actions brought under and by virtue of this paragraph against the delivering carrier shall be brought, and may be maintained, if in a district court of the United States, only in a district, and if in a State court, only in a State through or into which the defendant carrier operates a line of railroad," is not applicable to the instant case, for the reason that it relates to liability of the carrier for "the full actual loss, damage, or injury" to property received for transportation, and the case at bar is not a suit for "loss, damage, or injury" to property, but is based on a liquidated demand as the result of a compromise adjustment. The contention of the plaintiff in error that it is precluded from making a settlement, by 24 U. S. Statutes, 379, and amendments thereto, is likewise without merit. This statute would preclude the defendant railway company from giving any

undue preference or advantage to the plaintiff company by making a settlement if there were no liability; but there is nothing in the declaration to show that any undue preference was so given. On the contrary, according to the declaration and the evidence, the defendant railway company settled claims against it aggregating $565.41 for $410, and the fact that the railway company made such compromise adjustment would at least create a presumption of its liability to that extent. Furthermore, this statute, while prohibiting a carrier from giving any person, firm, or corporation an undue preference or advantage, also provides that it shall not subject any person, firm, or corporation "to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." It would certainly subject the plaintiff to a disadvantage were it forced to forego the remedy allowed by the laws of its resident State in a case where the debtor resides out of the State, and to prosecute its cause in a State other than that of its domicile. And trial in this State would result in no substantial interference with interstate commerce or the operation of the railway company, as, according to the evidence for the plaintiff, there was only one witness who knew about the compromise agreement so far as the railway company was concerned. Even if this one witness were still connected with the railway company, the convenience of the plaintiff to maintain its action in a court of its domicile would outweigh the inconvenience to interstate commerce. In Cressey v. Erie R. Co., 278 Mass. 284 (180 N. E. 160), an "action based on cause of action which arose in Georgia by reason of contract made in New York, and instituted by resident by means of attachment on property in Massachusetts, against nonresident railroad engaged in interstate commerce, but having no place of business and not owning or operating railroad within Massachusetts," the Supreme Court of Massachusetts, after citing decisions of the Federal courts, said: "We think that the case at bar differs from all those decisions in the material fact that here the plaintiff was at the time of his initial transaction with the defendant, and at all times since has been a resident of this Commonwealth. He has made no removal of residence since his original contract with the defendant, and has not sought relief in the courts of any foreign jurisdiction. He is asking redress for his grievance in the courts of the State where he has continuously resided. . . On principle, we think that the right and convenience of the plain-

tiff to maintain the action in the courts of his domicile outweigh the inconvenience to interstate commerce which may result from the presentation of its defence in the courts of this Commonwealth by the defendant. The plaintiff's cause of action against the defendant is his property. In appropriate instances he would have the right to invoke for the protection of that property the guarantees of articles 5 and 14 of the amendments to the constitution of the United States. Forbes Pioneer Boat Line *v.* Board of Commissioners, 258 U. S. 338, 340 (42 Sup. Ct. 325, 66 L. ed. 647). To compel him to leave the courts of his domicile, where he has secured by attachment property of the defendant and thus to that extent jurisdiction over the defendant, and to go to a foreign State to prosecute that cause of action with the added expense and inconvenience, savors of deprivation of property without due process of law. These factors in conceivable cases might be such an obstacle to a plaintiff as to prevent any attempt to enforce his cause of action. While not theoretically taken away, the cause of action might be so hedged with burdens touching its enforcement as to render it practically much reduced in value. As was said in somewhat analogous connection in Railroad Company *v.* Harris, 12 Wall. 65, at page 84, 20 L. ed. 354, 'In many instances the cost of the remedy' would largely exceed 'the value of its fruits. . . The result would be, to a large extent, immunity from all legal responsibility.' The inconvenience to the defendant likely to ensue from defence of the plaintiff's cause of action in this jurisdiction are not minimized. They do not on this record appear to be excessive, or unusual, or unduly burdensome. They do not seem to us of such nature as to overcome or render inapplicable the general rule that one has a right to enforce his cause of action in the courts of his domicile to the extent that he is able to obtain jurisdiction over the property of his adversary. Accepting the test that the 'requirements of orderly, effective administration of justice are paramount' (262 U. S. 316, 43 Sup. Ct. 556, 558, 67 L. ed. 996), we think that the plaintiff is entitled to prosecute the present action."

The court did not err in overruling the motion to dismiss the attachment or in overruling the plea to the jurisdiction.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*