## KNOTT CORPORATION v. FURMAN.

No. 5589.

Circuit Court of Appeals, Fourth Circuit.

June 16, 1947.

Writ of Certiorari Denied Oct. 27, 1947.

See 68 S.Ct. 111.

GRONER, C. J., dissenting.

———◆———

John W. Oast, Jr., and E. L. Ryan, Jr., both of Norfolk, Va. (White & Ryan, of Norfolk, Va., F. M. Schlater, of New York

City, and Edwin C. Kellam, of Norfolk, Va., on the brief), for appellant.

Edward R. Baird, of Norfolk, Va. (Baird, White & Lanning and Vernon D. Hitchings, Jr., all of Norfolk, Va., on the brief), for appellee.

Before PARKER, Circuit Judge, GRONER, Chief Justice of the United States Court of Appeals for the District of Columbia (sitting by special assignment), and DOBIE, Circuit Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment for damages in a negligence case. The plaintiff is Mrs. Mary Hale Furman, a citizen of the State of Massachusetts, who was injured in March 1945 in the course of a fire which damaged the Chamberlin Hotel on the Fort Monroe Military Reservation at Old Point Comfort, Virginia. Defendant is a Delaware corporation, having its principal place of business in New York, and was engaged at the time of the fire in operating the hotel. The plaintiff was injured while attempting to lower herself from a fifth story window of the hotel to a roof below by means of a rope of bed sheets, which broke while she was engaged in making the descent. She alleges negligence on the part of the defendant in connection with the origin of the fire, with delay in fighting it and with giving notice therof to the guests in the hotel. Defendant denies negligence, charges contributory negligence and denies that the venue is proper. There was verdict and judgment for plaintiff, and defendant has appealed. While numerous matters have been argued before us, the case as presented by the appeal resolves itself into three principal questions: (1) Was the venue proper? (2) Was there evidence to take the case to the jury? and (3) Was the case properly submitted under the judge's charge? We think that all of these questions should be answered in the affirmative.

The most important question before us is that relating to venue. Defendant challenges the jurisdiction of the court on the ground that, since plaintiff is a citzen of Massachusetts and defendant a Delaware corporation, suit in the Eastern District of Virginia was not in the district of residence of either plaintiff or defendant, as provided by the applicable venue statute, 28 U.S.C.A. § 112. Plaintiff contends that the venue is proper because defendant, by doing business within the State of Virginia, has consented to suit and service of process there under the applicable Virginia statute and has waived venue as to cases instituted against it in the federal courts of that state. Defendant denies that it has been doing business in Virginia and says also that, if what it was doing in the operation of the hotel constituted doing business within the meaning of the statute, this was done on federal territory to which the statute has no application.

The first contention of defendant, which is basic not only on this question of venue, but also on the question of negligence, later to be considered, is that it was not operating the hotel at all, and hence was not doing business in such way as to subject it to service of process under the Virginia statute or render it liable for negligence in connection with the fire that occurred. Its contention is that it was merely giving advice to the government in the operation of the hotel and making audit of the hotel's accounts from time to time. There is nothing in this contention. The evidence shows conclusively that defendant was operating the hotel and was furnishing all labor and services, as well as materials, articles and supplies required for its operation. The manager in charge of the operation was employed and paid by defendant as were the 293 other persons employed on the premises. The fact that the moneys used were derived from the operation, that a United States officer was on hand to protect the interests of the government and issue directives and that the defendant was paid a fixed sum for its services while the net profits of operation went to the government,—all of these taken together do not negative either the doing of business by defendant or defendant's responsibility in the operation of the hotel. The contract between defendant and the United States is before us and shows clearly that, while the defendant was restricted in many ways in the operation of the hotel, it was the de-

fendant and not the government that was running the business. There is nothing in the parol evidence which would justify a contrary conclusion; and the judge properly instructed the jury to that effect.

We shall point out later that, for the purposes of venue, the doing of business on the Fort Monroe Military Reservation does not differ from doing business elsewhere in the Eastern District of Virginia; and we think it clear that such doing of business amounts to consent to the service of process upon the Secretary of the Commonwealth of Virginia and consent to be sued in the federal court of the district as well as in the state courts with respect to a cause of action which has arisen there. The Code of Virginia, Supp.1946, section 3846a contains the following provisions:

"1. Any foreign corporation doing business in this State shall by written power of attorney appoint the Secretary of the Commonwealth and his successor in office its true and lawful attorney for the purposes hereinafter stated.

"2. Any foreign insurance company, and any guaranty, indemnity, fidelity or security company as defined in section forty-two hundred of the Code of Virginia, before doing business in this State shall by written power of attorney appoint the Secretary of the Commonwealth and his successor in office its true and lawful attorney for the purposes hereinafter stated.

"3. If any such company shall do business in this State without having appointed the Secretary of the Commonwealth its true and lawful attorney as required herein, it shall by doing such business in the State of Virginia be deemed to have thereby appointed the Secretary of the Commonwealth its true and lawful attorney for the purposes hereinafter set forth.

"4. The requirements of the preceding subsections of this section shall be in addition to and not in derogation of any other provisions of law, except that any foreign corporation which has in effect a power of attorney appointing the Secretary of the Commonwealth its attorney for the purposes hereinafter stated shall be deemed to have complied with the requirements of such subsections."

It will be noted that under section three of the statute the doing of business is deemed to be an appointment of the Secretary of the Commonwealth as process agent whether appointment has been formally made or not. Question has been raised as to whether this should not be limited to the companies mentioned in section 2, but we think it clear that it was intended to apply to foreign corporations generally. The statute is of a highly remedial nature and, under familiar principles, is to be liberally construed. Both the foreign corporations mentioned in section 1, and foreign insurance companies, guaranty companies etc. mentioned in section 2 were required to appoint the Secretary of the Commonwealth agent for the service of process, the separate section being devoted to insurance companies, guaranty companies, etc. so as to bring them under the statute whether incorporated or not. The word "company" includes "corporation" but is a word of broader meaning; and it is reasonable to construe the words "such company" in section 3 as intended to embrace any of the entities referred to in the preceding paragraphs which were required to appoint the Secretary of the Commonwealth as process agent. Section 4 shows that the whole purpose of the code provision was to liberalize the law with respect to bringing foreign corporations into court; and there would be no sense in giving such a narrow interpretation to section 3 as would confine its provisions to the insurance companies, guaranty companies, etc., described in section 2. So far as the application of the statute to the case at bar is concerned, it should be observed that, since the cause of action sued on arises out of business done within the state, section 3 is merely declaratory of the rule which the courts would apply in such a case if the statute had contained only section 1; the rule being that by doing business in the state a foreign corporation, as to causes of action arising out of such business, consents to service on a process agent which by the statute of the state it is required to appoint. Simon v. Southern R. Co., 236 U.S. 115, 130, 35 S.Ct. 255, 59 L.Ed. 492; Old Wayne Life Ass'n v. McDonough, 204 U.S. 8, 22, 27 S.Ct. 236, 51

L.Ed. 345; St. Clair v. Cox, 106 U.S. 350, 1 S.Ct. 354, 27 L.Ed. 222.

■ Since the staute must be construed as providing that, by doing business in the State of Virginia, a foreign corporation shall be deemed to have thereby appointed the Secretary of the Commonwealth as process agent, and since the defendant unquestionably did business in the state within the meaning of the statute (assuming at this stage that doing business within the Fort Monroe Reservation was the same as doing business elsewhere within the state), there would seem to be no question as to its having appointed a process agent. The defendant must be presumed to have knowledge of the law of the state; and, when it did business in the state with knowledge of the provision of the law to which we have referred, it necessarily consented to the appointment of the process agent therein provided. As said by the Supreme Court in R. R. Co. v. Harris, 12 Wall. 65, 81, 20 L. Ed. 354: "The chief point of difference between the natural and the artificial person is that the former may do whatever is not forbidden by law; the latter can do only what is authorized by its charter. It cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there it will be presumed to have assented and will be bound accordingly."

In Simon v. Southern R. Co., supra, 236 U.S. 115, 130, 35 S.Ct. 255, 260, 59 L.Ed. 492, the Supreme Court stated the rule with respect to causes of action arising within the state as follows: "Subject to exceptions, not material here, every state has the undoubted right to provide for service of process upon any foreign corporations doing business therein; to require such companies to name agents upon whom service may be made; and also to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law. Mutual Reserve Ass'n v. Phelps, 190 U.S. 147, 23 S.Ct. 707, 47 L.Ed. 987; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569."

In Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488, 490, the Circuit Court of Appeals of the Eighth Circuit, speaking through Judge Johnsen, dealt with a statutory appointment of process agent, such as the one before us, saying: "We must accordingly hold that, under § 24-1201, Neb. Comp.St.1929, as expressly and impliedly construed by the Supreme Court of that state, where a foreign corporation is doing business in the state, valid service of process may be made against it, upon the state auditor, without a specific appointment of such officer as its agent. By undertaking to do business in the state, the corporation accepts and is bound by the automatic appointment which the statute makes, and is thereby prevented from escaping responsibility to the citizens of the state and its tribunals, by a failure to qualify or to appoint a resident agent."

The rule is thus stated in 23 Am.Jur. p. 512: "Upon the theory of implied consent, by entering the state and engaging in business therein without first qualifying under the valid local laws, which provide for service on a statutory agent, or complying with a lawful requirement that it designate some person of its own selection or a prescribed state official as its agent to receive service of process in suits against it, such a corporation may be deemed to have consented that jurisdiction of the local courts over it while thus engaged may be acquired through service upon its agent in charge of such business, whom it is deemed to have designated for the purpose, or upon the prescribed state official as the case may be, in all suits arising out of such business, although not in suits on foreign transitory causes of action unconnected with the corporation's business in the state, where jurisdiction is sought to be rested on service made upon a state officer or other person whose authority to receive process is derived exclusively from statute, unaided by any representative relation to the corporation."

See also 23 Am.Jur. 498; Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250; Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; Old Wayne Mutual Life Ins.

Co. v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345; Bagdon v. Philadelphia etc. Coal Co., 217 N.Y. 432, 111 N.E. 1075, Ann.Cas.1918A 389.

The decisions to which we have adverted draw a distinction between express and implied consent with respect to causes of action which arise out of business done within the state and those which do not so arise. As to the former, but not the latter, implied consent is equivalent to that which is express. Only with respect to causes of action not arising out of business done within the state does any question arise as to the sufficiency of implied consent. See also 23 Am.Jur. pp. 499–501; Lipe v. C. C. & O. R. Co. 123 S.C. 515, 116 S.E. 101, 30 A.L.R. 248 and note; Smolik v. Philadelphia etc. Coal Co., D.C., 222 F. 148.

■ It is well settled that appointment of an agent upon whom service of process can be made within a state waives the provision of the federal venue statute, so that a defendant may be sued in the state in the federal court as well as in the state court, if the case is within the federal jurisdiction. Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 60 S.Ct. 153, 155, 84 L.Ed. 167, 128 A.L.R. 1437; Ex Parte Schollenberger, 96 U.S. 369, 24 L.Ed. 853. The basis of the rule was well stated by Mr. Justice Frankfurter in the Neirbo case as follows: "The classic doctrine was that a corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty.' Bank of Augusta v. Earle, 13 Pet. 519, 588, 10 L.Ed. 274. Logically applied, this theory of non-migration prevented suit in a non-chartering state, for the corporation could not be there. And such was the practice of the circuit courts until the opinion of Chief Justice Waite in Ex parte Schollenberger, 96 U.S. 369, 24 L.Ed. 853, displaced metaphor with common sense. The essential difference between the practice which Mr. Justice Nelson initiated at circuit and the decision in Schollenberger's case was not a matter of technical legal construction, but a way of looking at corporations. Men's minds had become habituated to corporate activities which crossed state lines. The fact that corporations did do business outside their originating bounds made intolerable their immunity from suit in the states of their activities. And so they were required by legislatures to designate agents for service of process in return for the privilege of doing local business. That service upon such an agent, in conformity with a valid state statute, constituted consent to be sued in the federal court and thereby supplanted the immunity as to venue, was the rationale of Schollenberger's case."

■ Applying to the case at bar the "common sense" which Chief Justice Waite is said by the Supreme Court to have applied in the Schollenberger case, we think it clear that with respect to waiving the provisions of the federal venue statute there can be no distinction between the consent to suit and service of process implied from doing business in the state and that arising out of appointment of a process agent, so that where a foreign corporation has given such consent as subjects it to suit in the courts of the state, the same consent subjects it to suit in the federal courts there sitting if the elements of federal jurisdiction are present. Or to put the matter concretely, the consent implied from doing business in the state not only authorizes suit in the courts of the state, with service of process upon a designated state officer, but also waives the provisions of the federal venue statute so that suit can be brought in the federal court, if the elements of federal jurisdiction are present.

There is a distinction between express and implied consent, but this distinction has relation to the origin of the cause of action, not to the effect on venue. It is reasonable to imply consent to suit and service of process from the doing of business within the state as to causes of action arising out of such business but not as to other causes of action. There is no reason for any distinction between express and implied consent, however, when it comes to the waiver of venue. If the doing of business can be held to furnish the basis of consent with respect to suit in the courts of the state, there is no reason why it should not be equally efficacious with respect to furnishing the basis of consent to suit in the federal courts. If the view be taken that the consent is wholly fictitious, there is no reason why the fiction should not serve as

well in the one case as in the other. If the court, "for purposes of justice", to use the language of Judge Learned Hand in the Smolik case, supra [222 F. 151], treats the situation as if there had been consent, there is no reason why "purposes of justice" should not be considered under federal as well as under state statutes. Certainly no purpose of justice is served by permitting a defendant to be sued in the state but not the federal courts in a situation such as this, where the defendant himself unquestionably has the right to remove the case to the federal courts if sued in the state courts.

A very similar question has been raised in two of the District Courts of this Circuit in actions before Judges Waring and Chesnut in Krueger v. Hider, D.C., 48 F. Supp. 708, and Steele v. Dennis, D.C., 62 F.Supp. 73. Both of these were actions against foreign motorists under statutes by the terms of which the motorist, by operating a vehicle upon the roads of the state, impliedly consented that process in an action against him growing out of such operation might be served upon a state officer. In both cases, it was held that such implied consent waived the provisions of the venue statute and that suit might be brought in the federal as well as in the state courts. The ground of decision in Krueger v. Hider was stated by Judge Waring as follows [48 F.Supp. 710]: "It seems clear to me that the defendant, Hider, when he drove upon the South Carolina roads accepted the terms of Section 437 of the South Carolina Code and thereby appointed the director of Motor Vehicle Division of the State Highway Department as his true and lawful attorney upon whom process could be served. By doing such act he waived the question of jurisdiction of person. This statement of law might have been seriously questioned before the decision in the Neirbo case hereinabove cited, but since the decision in that case it appears to me to be an inescapable and sound conclusion."

In the case of Steele v. Dennis, supra [62 F.Supp. 75], Judge Chesnut stated the ground of decision as follows: "The precise question presented is whether by his use of the Maryland highways, in accordance with the Maryland statute, the defendant has consented to be sued in this federal court. Clearly by statute he has consented to be sued in the State court by the form of service prescribed by the Act. No point has been made here that personal service on a defendant in this State is less effective as bearing on consent than if the less direct form of service authorized by the Act had been had. I think it logically follows from the principle of the Neirbo and Schollenberger cases that the defendant's consent to be sued in the federal court is implied from his voluntary use of the Maryland highways."

Everything said in these cases with respect to the consent to suit and service of process implied from the operation by an individual of a motor vehicle over the roads of a state manifestly applies a fortiori to the case of a foreign corporation doing business within a state.

We are advertent to the decisions in Cummer-Graham Co. v. Straight Side Basket Corp., 9 Cir., 136 F.2d 828; Robinson v. Coos Bay Pulp Corp., 3 Cir., 147 F.2d 512; and Moss v. A. C. L. R. Co., 2 Cir., 149 F.2d 701; In re Keasby & Mattison Co., 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402. In none of these cases, however, was there involved a statute providing, as does the Virginia statute, that the appointment of a state officer as agent for the service of process would be presumed from doing business in the state, and, what is more important, in none of these cases did it appear, as here, that the cause of action sued on arose out of business done within the state.

As pointed out above, it is only with respect to causes of action arising out of business done within the state that consent will be implied, because of the doing of business, to suit and service of process within the state. On mere transitory causes of action or causes of action arising without the state, the consent must be evidenced by the appointment of a process agent; and, in the absence of such appointment, not only is there no waiver of venue under the federal statute, but there is also no jurisdiction acquired under the state statute. In the Neirbo case it was necessary to distinguish the Keasby & Mattison case, because neither case arose out of business

done within the state, and only the appointment of a process agent in the Neirbo case, which was absent in the Keasby & Mattison case, supplied the consent to be sued within the state upon which waiver of venue under the federal statute was based. Where such consent is given with respect to causes of action arising out of business done within the state by the doing of such business, there is nothing in any of the cases cited which holds or suggests that it should not be given effect in waiving federal venue as well as in conferring state jurisdiction. To hold that it should be given effect for one purpose but not for the other would not only be illogical but would result in the anomaly of permitting the defendant to be sued in the state but not in the federal courts, although all the elements of federal jurisdiction are present and although defendant would itself have the right to remove the case into the federal court if sued in the courts of the state.

We come, then, to the question as to whether the application of the statute is different because the business done was on the Fort Monroe Military Reservation. We do not think so. It would be an anomalous result, indeed, if a foreign corporation doing business in Virginia could not be sued in a federal court with respect to business done merely because it was done on federal territory; and we find nothing in the law which would lead to any such result. The land contained in the Reservation was ceded by the State of Virginia to the United States by the Act of March 1, 1821, which contained the following provision: "* * * that the said cession shall not be construed or taken so as to prevent the officers of the State from executing any process or discharging any legal functions within the jurisdiction or territory herein directed to be ceded."

If this provision means anything, it means that the laws of the State of Virginia with reference to the service of process run throughout the Reservation. This means, of course, not only that state officers may go upon the Reservation to serve process, but also that the state laws as amended from time to time will determine what acts on their part constitute service. In 1821 the problem of bringing foreign corporations into court had not arisen; but it was certainly competent, under the power reserved, for the state to provide how service on such corporations should be made within the Reservation. If it could do this, there is no reason why its general laws with reference to service on foreign corporations should not be held applicable to foreign corporations doing business within the Reservation. It is true that the power to exclude foreign corporations from the Reservation was not reserved, but the power to serve process there was reserved; and corporations doing business within the Reservation must be presumed to consent thereby to the consequences prescribed by state laws with respect to service of process.

Corporations doing business on the reservation come in contact with the citizens of Virginia and do business with them in the same way as foreign corporations doing business elsewhere within the state, and there is the same reason for making them amenable to process in the local courts. Since the state has retained the right to serve process on foreign corporations as well as on others within the reservation and has the power to say what shall constitute such service, it follows that any act which may be legally taken as an acceptance of service elsewhere within the state may be so taken within the reservation. This necessarily means that the doing of business by a foreign corporation within the reservation has the same effect, so far as submitting itself to the local jurisdiction for the service of process is concerned, as doing business elsewhere within the state.

To sum up on this point, we hold: (1) The defendant was unquestionably doing business on the Fort Monroe Military Reservation within the Eastern District of Virginia, where the suit was brought. (2) For the purposes of consenting to suit and waiving venue there is no difference between doing business on the Reservation and doing business elsewhere within the Eastern District of Virginia. (3) Under the statute of Virginia, the doing of business within the state amounts to consent to be sued in the courts of the state with respect to causes of action arising out of such business and consent that service of process be made on the Secretary of the

Commonwealth of Virginia. (4) Consent to be sued in the courts of the state carries with it consent to be sued in the federal courts within the state if the elements of federal jurisdiction are present. (5) The elements of federal jurisdiction were present in this case, the cause of action arose out of business done within the state, and the consent arising from the doing of business authorized the bringing of this suit in the federal court where the business was done.

The other questions in the case present no difficulty and can be disposed of briefly. As to the sufficiency of the evidence, this is raised by defendant's motion for directed verdict; and in such case, the rule is well settled that the evidence must be taken in the light most favorable to plaintiff. When so taken, there is evidence here clearly tending to establish that the fire resulted from the negligence of defendant in permitting the accumulation of combustible material in the west stair well or fire escape of the hotel, that doors leading from the stair well were negligently left open causing the floor on which plaintiff was sleeping to be filled with smoke and fumes, that there was negligent delay in calling the fire department and extinguishing the fire, and that there was negligence in failing to awaken the guests and advise them as to the condition of affairs. There was conflicting evidence with respect to all of these matters; but this was for the consideration of the jury and not for the court on the motion for directed verdict.

As to contributory negligence, it was for the jury to say under all the circumstances of the case whether the action of plaintiff in attempting to let herself down from the window by the rope of bed sheets constituted contributory negligence. Instead of the defendant's being entitled to a directed verdict as to this, the question really suggested by the evidence is whether plaintiff was not entitled to have verdict directed in her behalf. The evidence shows that she was awakened around midnight to find her room filled with smoke and fumes; that her husband tried to find the stairway or some means of exit in the hall but could make no progress; that she heard nothing from the hotel office and thought that she had been left to her own resources; and that only in the extremity of the moment did she and her husband resort to the expedient of trying to descend from the window. Reasonable men could hardly differ in exonerating her of negligence in attempting this method of escape from what manifestly appeared to her to be a desperate situation. Defendant in this connection complains of the court's applying here the emergency doctrine to the question of contributory negligence. Quite irrespective of this doctrine, it is clear that the question of contributory negligence was one for the jury; but, if the doctrine is not applicable in the case of one who thinks that he is trapped on the fifth floor of a burning hotel, it is hard to imagine circumstances under which it would be applicable.

The charge of the court submitted the contentions of the parties fairly and stated correctly the law applicable in the premises, charging that the duty of the defendant as innkeeper was that of reasonable or ordinary care, that it was not an insurer or guarantor of the safety of guests, but that the standard to be applied is "what an ordinarily prudent person would do under the same circumstances to keep his guests in comfort and safety." That this is a correct statement of the rule applicable, see 28 Am.Jur. 582, and notes in 37 A.L.R. 160, 43 L.R.A. (N.S.) 660, and Ann.Cas. 1917A 144 and cases there cited. We have carefully examined the charge in the light of the exceptions taken at the time and find nothing of which defendant has reasonable ground of complaint.

The only evidentiary matter complained of in the brief is that plaintiff was allowed to cross examine as hostile a witness whom she had called, but it is well settled that this was a matter resting in the sound discretion of the trial judge. Point was made as to the service of process; but it appears that summons was served upon defendant's manager in charge of the hotel and also upon the Secretary of the Commonwealth and, in view of what we have said in discussing venue, this was unquestionably sufficient.

There was no error and the judgment appealed from will be affirmed.

Affirmed.

GRONER, C. J. (dissenting).

I think the judgment below should be reversed and the action dismissed for improper venue. The suit is based on diversity of citizenship and was not brought in the district of the residence of either the plaintiff or the defendant,[1] and nothing in the nature of a waiver is shown, as in the case of Nierbo Co. v. Bethlehem Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437.[2] The cause of action arose on a military reservation belonging to the United States and over which the United States had and exercised "entire jurisdiction," and which by the act of cession Virginia had put beyond the field of the operation of her law.[3]

In this state of the case, to hold that the reservation by Virginia of the right of the officers of the state to execute "any process" or discharge "any legal functions"[4] nullified the positive jurisdictional limitation of the federal statute would subject the federal procedure to the requirements of state law,—which I think may not be done.

---

[1] Judicial Code, Section 51, 36 Stat. 1101, Act March 3, 1911, 28 U.S.C. § 112.

[2] And see also the three following cases in line with the Nierbo case: Moss v. Atlantic Coast Line R. R., 2 Cir., 1945, 149 F.2d 701; Robinson v. Coos Corp., 3 Cir., 1945, 147 F.2d 512; Cummer-Graham Co. v. Basket Corp., 9 Cir., 1943, 136 F.2d 828.

[3] See—Pacific Coast Dairy v. Department of Agriculture of California, 1943, 318 U.S. 285, 294, 63 S.Ct. 628, 87 L.Ed. 761; Stewart & Co. v. Sadrakula, 1940, 309 U.S. 94, 100, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821; Collins v. Yosemite Park Co., 1938, 304 U.S. 518, 533, 58 S.Ct. 1009, 82 L.Ed. 1502; Murray v. Gerrick, 1934, 291 U.S. 315, 318, 54 S.Ct. 75, 78 L.Ed. 537; Standard Oil Co. v. California, 1934, 291 U.S. 242, 54 S.Ct. 526, 78 L.Ed. 775; United States v. Unzeuta, 1930, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761; Arlington Hotel Co. v. Fant, 1929, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447.

[4] Va.Laws (1820–21) c. 73, pp. 102–3.