GIBSON et al. v. UNITED STATES LINES.

SAME v. A. H. BULL & CO., Inc.

Civ. A. Nos. 3735, 3744.

District Court, D. Maryland.

Dec. 10, 1947.

Maurice Braverman, of Baltimore, Md., and William Murphy, of New York City, for plaintiffs.

Kirlin, Campbell, Hickox & Keating, of New York City, and Ober, Williams, Grimes & Stinson and Robt. W. Williams, all of Baltimore, Md., for defendants.

CHESNUT, District Judge.

Motions have been made to dismiss the complaints in the above cases. Both motions present the same point, that the court lacks proper venue because the suits are not based on diverse citizenship but under the Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq., and the defendants in both cases are corporations under the laws of a State other than Maryland, where the suits are brought in a federal district court. The point is made that the venue therefore does not meet the requirement of section 112 of title 28 of the United States Code Annotated, section 51 of the Judicial Code, which provides that a defendant shall be sued only in the district of which it is an inhabitant. In both cases the defendants have long past been doing business in the State of Maryland and have appointed a resident agent for the service of process in accordance with the Maryland statutes affecting foreign corporations doing business in the State. Md.Code, Art. 23, §§ 117–122. The alleged overtime work, compensation for which is the basis of the suits, was performed by the plaintiffs as stevedores for the defendants in Baltimore, Maryland.

These motions are resisted by the plaintiffs under the now well-known doctrine of Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437 (jurisdiction in the particular case being on the ground of diverse citizenship), which held that the appointment of an agent to receive process (under the New York statute) constituted consent to be sued in the federal as well as the state courts, and therefore was a waiver by the defendant of the personal privilege of the general venue statute. In answer to this contention the defendant makes two points: (1) that the doctrine of the Neirbo case applies only to suits where the jurisdiction is based on diverse citizenship and (2) that an amendment in 1941 of the Maryland statute relating to the appointment of an agent for the service of process is to the effect that it destroys the consent to suits "on any cause of action on which it would not be subject to suit in this State if it had not complied with this section"; and therefore the doctrine of the Neirbo case is not applicable to the instant case.

I do not think the first point can be successfully maintained. The doctrine of the Neirbo case has been applied in many subsequent federal judicial decisions. Thus it has recently been so applied in three separate cases, each of which involved a suit under the Fair Labor Standards Act, as in the instant case. Arney v. Central Elec. & Gas Co., D.C.Minn., 66 F.Supp. 401; Beard v. Continental Oil Co., D.C.La., 42 F.Supp. 310; McMaster v. Texas Gulf Producing Co., D.C.Tex., 44 F.Supp. 672. As I read the Neirbo case its rationale is not limited to the particular case of diverse citizenship jurisdiction. See Vogel v. Crown Cork & Seal Co., D.C.Md., 36 F.Supp. 74; Bennett v. Standard Oil Co., D.C.Md., 33 F.Supp. 871; Steele v. Dennis, D.C.Md., 62 F.Supp. 73. And more importantly, the doctrine of the Neirbo case was applied by the Supreme Court in Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 7, 60 S.Ct. 215, 84 L.Ed. 537, where the jurisdiction of the court was not based on diverse citizenship, but on a federal constitutional point, it being a public utility rate controversy. And in Dehne v. Hillman Investment Co., 3 Cir., 110 F.2d 456, 458, the doctrine of the Neirbo case was also applied to a controversy where the jurisdiction was not dependent upon diverse citizenship. I note that a contrary conclusion has recently been reached in the 6th Circuit in the case of American Chemical Paint Co. v. Dow Chemical Co., 161 F.2d 956, 960; but in view of the numerous decisions to the contrary, I do not feel that I should follow that decision.

Counsel for the defendants rely upon three cases in support of their contention that the doctrine of the Neirbo case applies only to diverse citizenship cases. They are Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, Bulldog Elec. Prod. Co. v. Cole Elec. Prod. Co., 2 Cir., 134 F.2d 545, and Carbide & Carbon Chemicals Corp. v. United States Ind. Chemicals, Inc., 4 Cir., 140 F.2d 47. But in my opinion these cases do not support the contention made. It is true that the latter two indicate some uncertainty whether the Neirbo doctrine applies to cases other than diverse citizenship; but all of them were decided on other grounds. All of them involved patent infringement, or declaratory judgment suits for patent infringement in which the venue is expressly provided for in section 48 of the Judicial Code, 28 U.S.C.A. § 109, which provides that such suits shall be brought "in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business". The holding in each of the cases was that the special provision for patent infringement suits in section 48 of the Judicial Code was exclusive. And it may be noted that at the end of the opinion in the Stonite case it was said [315 U.S. 561, 62 S.Ct. 783] "Section 51 [of the Judicial Code, (28 U.S.C.A. § 112) with which we are here particularly concerned] is, of course, not applicable to patent infringement proceedings. Gen. Elec. Co. v. Marvel Rare Metals Co., supra [287 U.S. 430, 434, 435, 53 S.Ct. 202, 77 L.Ed. 408]." A waiver by consent to be sued was not relied on in the Stonite case.

The Neirbo doctrine was discussed and applied in Judge Parker's opinion for the Fourth Circuit in the recent case of Knott Corp. v. Furman, 163 F.2d 199, certiorari denied 68 S.Ct. 111. The jurisdiction there was diverse citizenship but I find nothing in the opinion inconsistent with the view above expressed, and I think it may be said that the discussion tends rather to support than to depart from the view that I take of the point now involved. Thus, in the opinion it was said, 163 F.2d at page 204: "It is well settled that appointment of an agent upon whom service of process can be made within a state, waives the provision of the federal venue statute, so that a defendant may be sued in the state in the federal court as well as in the state court, *if the case is within the federal jurisdiction.* * * * Or to put the matter concretely, the consent implied from doing business in the state not only authorizes suit in the courts of the state, with service of process upon a designated state officer, but also waives the provisions of the federal venue statute so that suit can be brought in the federal court, *if the elements of federal jurisdiction are present".* Italics supplied.

The second objection to the application of the Neirbo doctrine to this case requires consideration of the Maryland statutes affecting foreign corporations. Before 1937 these statutes were contained in the Maryland Code of 1924, art. 23, §§ 116 to 125. These sections were largely amended by the Act of 1937, c. 504, now to be found in the Maryland Code of 1939, art. 23, §§ 117 to 122.

Very briefly summarized (to the extent relevant to this case) they provide as follows:

"Sec. 118. * * * And every foreign corporation doing intrastate or interstate or foreign business in this State shall be deemed thereby to have assented to all the provisions of the laws of this State".

"Sec. 119(a). Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a resident or non-resident of this State on any cause of action arising out of such business and on any other cause of action".

Section 120(a) provides that every foreign corporation doing intrastate or interstate or foreign business in this State (with exceptions not here material) "shall have at least one resident agent in this State whose name and address, as such, have been certified to the State Tax Commission, * * *. Service of process upon any such resident agent of a foreign corporation shall bind such foreign corpora-

tion *in any action in which it is subject to suit in this State*". Italics supplied.

Other subsections of section 120 make a distinction between the requirements of the data filed with the State Tax Commission dependent upon whether the foreign corporation is doing an interstate or foreign or exclusively intrastate business. The requirements for the former are somewhat less than for the latter and are called "registration", while compliance with the conditions required for the intrastate business are called "qualification". By sections 121 and 122 various sanctions are provided for failure to comply with the statutory requirements.

By the Act of 1941, c. 687, section 120 (a) was re-enacted to include therein, after the clause above quoted "service of process upon any such agent of a foreign corporation shall bind such foreign corporation in any action in which it is subject to suit in this State", the following provision, "but, notwithstanding any other provisions of this Article to the contrary, compliance with this section *shall not of itself render a foreign corporation subject to suit in this State, or be construed as a consent by it to be sued in this State, on any cause of action on which it would not be subject to suit in this State if it had not complied with this section*". Code Supp.1943, art. 23, § 120(a).

It is the contention of counsel for the defendants that this addition made by the Act of 1941 destroys the existence of the element of consent to suit which was made the basis of the decision in the Neirbo case. But after a careful consideration of the Maryland statutes and the rationale of the opinion in the Neirbo case, I reach the contrary conclusion.

There has been no State judicial decision and there is no available legislative history as such to throw light upon the intention of the Maryland Legislature in passing the Act of 1941. It may be said that when the added provision in section 120(a) is read as an isolated clause, its purpose and intention may not be entirely clear. But read in the context of the related sections affecting foreign corporations, and in the light of certain other matters preceding the Act of 1941 to be now related, it is my opinion that the purpose of that Act was fairly clear.

In the first place, it is to be noted that so far at least as the liability of foreign corporations to suit in the Maryland State Courts is concerned, the fundamental basis therefor is not the designation of a resident agent, but the "doing of business" within the State. The requirement of the appointment of a resident agent is procedural in nature, to facilitate the service of process on the corporation, and to make the suit against it effective. The purpose of the Act of 1941 was to make it clear that a foreign corporation, not subject to suit in this State under the provisions of section 119 (as, for instance, where the business is only interstate or foreign as opposed to intrastate), does not subject itself to suit merely by appointing a resident agent. That this is the proper meaning and effect of the Act of 1941 will appear from certain happenings subsequent to the passage of the Act of 1937 and prior to the Act of 1941.

Shortly after the passage of the Act of 1937 the State Tax Commission received numerous inquiries from foreign corporations doing interstate business, whether the requirements of registration under the 1937 Act were fully applicable to them or whether they were exempt on the federal constitutional grounds with respect to the commerce clause of the Constitution. The State Tax Commission referred the questions to the office of the Attorney General of Maryland and received his opinion dated September 1, 1937, written by William L. Henderson, Assistant Attorney General (now one of the Judges of the Court of Appeals of Maryland) Vol. 22, p. 256. In this opinion it was said: "It should be noted that the requirement of registration, by designating an agent for the service of process, does not subject foreign corporations doing an interstate business to suit *in any case where such corporation would not have been subject to suit under the pre-existing law*. In other words, the requirement of designating an agent does not enlarge the liabilities of such corporations, since Section 118, as amended, appears to be no broader in substance than in its previ-

ous form, as enacted by chapter 240 of the Acts of 1908". Italics supplied.

Subsequently the State Tax Commission submitted further and more formally expressed questions to the Attorney General, the first of which read as follows: "1. If a foreign corporation which is doing only interstate or foreign business in this State registers under Section 119, will it thereby subject itself to suit in this State in actions in which it would not otherwise be subject to suit therein?"

In the ensuing opinion dated November 4, 1937 (see Vol. 22, Reports of Official Opinions of Attorney General of Maryland, p. 262), Mr. Henderson referred to his prior opinion, including the quotation above, and continuing, "As we construe the amended statute, the State requires every foreign corporation, doing interstate or foreign business in this State in such a manner *and to such an extent that it is subject to suit in this State,* to disclose how it can be reached by process *in actions in which it is subject to suit in this State.* No attempt is made to exact from the corporation a consent to be sued in this State *in actions in which it could not otherwise be so sued.* If compliance with the registration requirement constituted consent to suit in this State, in actions in which the corporation could not otherwise constitutionally be made subject to suit, the registration requirement would be unconstitutional. Sioux Remedy Co. v. Cope, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193; Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478. This is reason enough for not reading into the statute any such implication." Italics supplied.

This opinion of the Attorney General with respect to his construction of the Act of 1937, was at least questioned by Prof. G. Kenneth Reiblich (then Professor of Law at the University of Maryland and Associate Editor of the Maryland Law Review) in his extended article in Vol. III,

Md.Law Rev. pp. 35 to 75, entitled "Jurisdiction of Maryland Courts over Foreign Corporations under the Act of 1937". And a somewhat similar discussion of the Act of 1937 was included in an extended paper upon the subject by Herbert Myerberg of the Baltimore Bar, to be found in the Baltimore Daily Record of October 15, 1937.

Still later, in September 1940, this particular question of construction of the 1937 Act arose in the case of Steinwender, Stoffregen & Co. Inc. v. Ritchey, in the Circuit Court of Baltimore City. The opinion in that case can be found in the Daily Record of September 14, 1940, in which, under the stipulated facts, Judge O'Dunne reached the conclusion that the Act of 1937, in requiring registration was constitutionally inapplicable to a foreign corporation doing only interstate business. Shortly thereafter the Legislature of Maryland convened for its 1941 session. And I think it clearly inferable that the intention of the Legislature in passing the Act of 1941 was to make it clear that if foreign corporations did qualify or register with the State Tax Commission, they would not merely thereby subject themselves to suit in Maryland on causes of action as to which they had a constitutional right to exemption by reason of interstate business.

It is important to note that, on the point now under discussion, we are not concerned with the possible question whether the defendants are doing an interstate business only in the manner and to the extent that they would be properly immune to suits in Maryland on the constitutional ground that the suit would unduly burden interstate commerce.[1] The motions to dismiss are grounded only on the point that the defendants are foreign corporations, and therefore cannot be considered inhabitants of Maryland. The constitutional point of immunity from suit is not advanced in the motions. It appears from

[1] Of course, it is true that, as the plaintiffs sue under the Fair Labor Standards Act, it will be necessary for them to prove that they were respectively engaged in interstate commerce or in the production of goods for interstate commerce; and the complaints so allege. But this is an element of their substantive right of recovery which is not presently involved in the motion to dismiss which presents only a purely procedural point. As the defendants have not yet answered, it is not known whether they will admit or deny this substantive feature of the plaintiffs' case.

the complaints that the defendants respectively are generally engaged in doing business in Baltimore City and have principal offices here; and that the overtime work for which compensation is demanded was performed here by the plaintiffs who are residents of the State. While I note from the marshal's return that service was made upon the respective managers here of the defendants, it is not disputed but I understand is fully conceded, and is a fact that both corporations have "qualified" in accordance with the Maryland statutes, including the appointment of resident agents upon whom service of process can be made. No point is made in these cases that the service of summons was made on the resident managers instead of on the statutory resident agents. We have therefore a situation in which (a) the suit is by residents of Maryland; (b) for work done in Maryland; (c) with valid service upon the defendants. It follows that the defendants were amenable to suit in the Maryland State Courts by reason of the jurisdictional provision of the Fair Labor Standards Act, 29 U.S.C.A. § 216. That they are also subject to suit in the federal courts follows, I think, from the doctrine of the Neirbo case, in which Mr. Justice Frankfurter said in the opinion (after referring to Ex parte Schollenberger, 96 U.S. 369, 24 L.Ed. 853, on which the opinion in the Neirbo case was largely based), 308 U.S. at page 171, 60 S.Ct. at page 156, 84 L.Ed. 167, 128 A.L.R. 1437: "Since the corporation had consented to be sued in the courts of the state, this Court held that the consent extended to the federal courts sitting in that state." [2]

It is suggested for the defendants that the purpose of the addition by the Act of 1941 to section 120(a) was to overcome the holding by this court in Vogel v. Crown Cork & Seal Co., D.C., 36 F.Supp. 74, decided December 23, 1940.[3] In that case it was held that a foreign corporation doing business in Maryland and having a registered agent here was subject to suit in the federal court in a complaint based on section 63 of title 35 United States Code Annotated, concerning jurisdiction of the federal courts to authorize the issuance of a patent in an equity proceeding, after final rejection of the patent claim in the United States Patent Office. As pointed out in the opinion, the applicable venue section there involved was 28 U.S.C.A. § 112, section 51 of the Judicial Code, and not 28 U.S.C.A. § 109, section 48 of the Judicial Code. But for the reasons already given it is not my view that this was the purpose of the Act of 1941. And I am not aware of any contemporary history or thought in Maryland from which it could reasonably be inferred that the Legislature of the State would have been interested in attempting to defeat the suability of a foreign corporation in the federal court while permitting it in the State court.

 If such an intention could properly be read into the Act of 1941 it is very doubtful that it would be valid to that extent, because we are here dealing with the applicability of the federal venue statute

2 It is true that the opinion continued with the following sentences—"As to diversity cases, Congress has given the federal courts 'cognizance, concurrent with the courts of the several States'. The consent, therefore, extends to any court sitting in the state which applies the laws of the state". But, for the reasons previously pointed out in the text of the above opinion, I do not read the last-quoted sentence as limiting the doctrine of the Neirbo case to diversity cases. See also Bennett v. Standard Oil Co., D.C. Md., 33 F.Supp. 871; Vogel v. Crown Cork & Seal Co., D.C.Md., 36 F.Supp. 74; International Union v. Tennessee Copper Co., D.C.Tenn., 31 F.Supp. 1015; Lee v. Acme Freight Lines, D.C.Ga., 54 F.Supp. 397.

3 The basis for this seems to be an annotation by Mr. Francis J. Carey, a well-known corporation lawyer, appended to section 120 of Art. 23 of the Md.Code contained in a reprint of the statutes affecting foreign corporations. In this note the clause added to section 120(a) by the Act of 1941 is set out and thereafter there is a sentence reading "Prior to this amendment it had been held that compliance by a foreign corporation with the provisions of this section constituted a consent to be sued in this State, and was a waiver of the personal privilege of the corporation to be sued only in the State of its incorporation. 28 U.S. C.A. § 112; Vogel v. Crown Cork & Seal Co., D.C.Md.1940, 36 F.Supp. 74."

782

which must be determined as a federal question by federal judicial decisions, and particularly the Neirbo case which I consider here controlling. The only point made against the venue in these cases is that the defendants are foreign corporations and therefore not inhabitants of Maryland, and not suable in the federal court in Maryland by reason of the provisions of 28 U.S.C.A. § 112. But reliance on this section is merely a personal privilege given to the defendants which may be waived by their consent to being sued. Whether the foreign corporation has so consented to be sued depends upon its own actions in relation to the statutes of the State. If it has appointed a resident agent for the service of process, that is an express consent. But even if no such appointment has been made, the doing of business within the State may, under the statutes (as in Maryland), constitute an implied consent to be sued, at least as to causes of action arising from business done in the State. Knott Corp. v. Furman, supra. This seems clear enough as to suits in the State Court, and I think equally clear as to the federal court under the Neirbo case. I am aware of many federal decisions prior thereto which, in applying the venue provision of 28 U.S.C.A. § 112, held that the mere doing of business in a State is not itself sufficient to show consent to suit or waiver of the particular venue provision. But it will be noted from a reading of the Neirbo case that the Supreme Court returned to the reasoning of the much earlier case of Schollenberger, supra, which in turn had been largely influenced by the still earlier decision in Baltimore & O. Railroad v. Harris, 12 Wall. 65, 20 L.Ed. 354. These three cases, Harris, Schollenberger and Neirbo, read together warrant the conclusion that the substantial exercise of corporate franchises and doing business in a State by a foreign corporation under foreign corporation laws which thereby make the corporation suable in the State, may constitute a waiver of the personal venue privilege in the federal court.[4]

The legal idea that a corporation could not be an inhabitant of a State in which it was doing business, if not the State of its incorporation, as pointed out in the Neirbo opinion, was due to the historical development of the legal concept of the corporate entity. But, as said by Mr. Justice Frankfurter in the Neirbo case, the Schollenberger case took the common sense rather than the metaphorical view of the corporate entity and was a new "way of looking at corporations". It is not in accord with realities to continue the view that a foreign corporation, having little if anything of substance, either of assets or business, in the State of its incorporation, but doing ninety-nine per cent of its whole business in another State, should continue to be not treated as an inhabitant of the State in which it really conducts its business. Furthermore, the main purpose of the general venue statute was to promote the convenience of individual defendants when sued in the federal courts. Every reason of convenience seems to require treating the foreign corporation doing a substantial business within the particular State (with respect to causes of action arising in that State), as having consented, in accordance with the provisions of State statutes, to suits therein in the State and also in the federal courts where the elements of federal jurisdiction exist. This modern view of the subject matter has been further developed by Judge Parker of the Fourth Circuit in his opinion in Knott Corp. v. Furman, supra, where, in a diversity case, the foreign corporation doing business on a federal military reservation in Virginia was, with respect to a cause of action arising therein, held subject to suit in the federal court of Virginia although it had not in fact appointed the Secretary of the Commonwealth of Virginia its attorney for service of process, in view of the Virginia statute which provided that the doing of business in the State should of itself be deemed an appointment by the corporation of the Secretary of the Commonwealth as its true and

---

4 See the discussion in the Neirbo opinion, 308 U.S. 174, 60 S.Ct. 153, 155, 84 L.Ed. 167, 128 A.L.R. 1437, and earlier federal decisions cited and disapproved in Note 16.

lawful attorney for the purpose of service of process.

For these reasons I conclude that the motions to dismiss the suits must be *overruled*. Counsel may present the appropriate orders in due course.