SWANSON PAINTING COMPANY,
Appellant,

v.

PAINTERS LOCAL UNION NO. 260,
Appellee.

No. 21842.

United States Court of Appeals
Ninth Circuit.

March 20, 1968.

Thomas D. Frey (argued) of Guttorm-
sen, Sholfield, Willits & Ager, Seattle,
Wash., for appellant.

Leo Graybill, Jr. (argued), Great
Falls, Mont., for appellee.

Before HAMLEY, JERTBERG and
BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

This is an interlocutory appeal from a district court order denying defendant's motion to quash the service of process for lack of personal jurisdiction over defendant or, in the alternative, to dismiss the cause or transfer it to another district on venue grounds.

Plaintiff, Painters Local Union No. 260, of Great Falls, Montana, commenced this action against Swanson Painting Company, a Washington corporation, in the United States District Court for the District of Montana. The suit was brought under section 301(a) of the Labor Management Relations Act of 1947 (Act), 61 Stat. 156, 29 U.S.C. § 185(a) (1964), to recover damages for violation of a contract between an employer and a labor organization. Personal service of the summons and complaint was made on Swan B. Swanson, president of the company, at Woodinville, Washington.

The company, which has its principal place of business in Western Washington, is a painting contractor. It has never been licensed to do business in Montana. However, on January 11, 1966, the company entered into a contract with the United States to paint three hundred housing units and repair thirty-one carport slabs at Malmstrom Air Force Base, a federal military reservation or enclave in Montana. While performing this work in 1966, the company registered the job with the plaintiff union which maintains its offices at Great Falls, Montana, and hired local employees.

The company completed the contract in early August 1966, and by August 16, 1966, had returned all of its equipment and out-of-state employees to Western Washington. At the time the action was commenced on January 11, 1967, the company had no employees or agents within Montana, maintained no office or mailing address in Montana and was transacting no business within that state.

■ Under section 301(a) of the Act, suits of this kind may be brought in any district court of the United States "having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." In the case of a party outside the state where the district court is located, such as we have in this case, there are two requisites to the acquiring of personal jurisdiction. The first is the obtaining of effective service of process. The second is existence of sufficient contacts between the party and the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. As to the latter factor, see International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; Dragor Shipping Corp. v. Union Tank Car Co., 9 Cir., 361 F.2d 43, 45.

Swanson Painting Company contends that neither of these prerequisites of personal jurisdiction over the company by the Montana district court was met in this case.

The procedure to be followed in the district courts in obtaining personal service upon a party not an inhabitant of, or found within, the state where the district court is located, is governed by Rule 4(e), Federal Rules of Civil Procedure. This rule provides, among other things, that whenever a statute or rule of court of the state in which the district court is held provides for service of a summons upon a party not an inhabitant of or found within the state, service may be made under the circumstances and in the manner prescribed in the statute or rule.

Rule 4B(1) of the Montana Rules of Civil Procedure provides, in part, that any person is subject to the jurisdiction of the courts of that state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of specified acts, including:

"(a) the transaction of any business within this state;

\* \* \*

"(e) entering into a contract for services to be rendered or for mate-

rials to be furnished in this state by such person * * *."

■ Swanson Painting Company contends that neither (a) nor (e) of Montana Rule 4B(1) applies here because most of the business the company transacted in Montana, and the services it rendered and materials it furnished in that state, were transacted, rendered and furnished within the federal enclave known as Malstrom Air Force Base.[1] In this connection the company calls attention to Article 1, Section 8, Clause 17 of the Constitution, providing that Congress shall have the power to exercise exclusive legislation over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings.[2]

The company cites no authority for the proposition that a "long-arm" statute or rule such as Montana Rule 4B(1) is inapplicable if the incidents which would otherwise give effect thereto occur within the confines of a federal enclave as to which the state has not reserved legislative jurisdiction. In our opinion the latter circumstance is wholly irrelevant in applying any long-arm statute or rule, and, particularly, in applying Montana Rule 4B(1).

■■ The fact that business is transacted within a federal enclave, or that services are rendered or materials are furnished within a federal enclave, does not immunize the persons engaged therein from liability for breach of any duty arising from such activity. This being true, the acquisition of the personal jurisdiction necessary to give a court the power to deal with such a breach should not be defeated by the fact that the breach occurs within a federal enclave.

No decision has come to our attention dealing with this precise point. However, we think the Fourth Circuit opinion in Knott Corporation v. Furman, 163 F.2d 199, dealing with a Virginia statute specifying the duties of a foreign corporation "doing business" within the state, persuasively points in the direction of our view expressed above.[3]

---

1. While most of the company's activities in Montana took place within the Malmstrom Air Force Base, the company did, as noted above, register the job with the plaintiff union, which maintains its offices at Great Falls, Montana, and did hire local employees.

2. In James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, the Supreme Court held that states can qualify sales of land to the United States so as to retain jurisdiction. Consistent therewith, Montana, in ceding to the United States exclusive jurisdiction of the lands on which Malmstrom Air Force Base is situated, nevertheless reserved the right to serve and execute civil or criminal process within the limits of the territory acquired by the United States, in any suits or transactions for or on account of any rights obtained, obligations incurred, or crimes committed in Montana, within or without such territory. General Cession Statute of Montana, Mont.Rev.Code § 83–108 (1947). The company is quite correct, however, in stating that Montana does not have legislative jurisdiction within the area encompassed by Malmstrom Air Force Base.

3. In Knott Corporation v. Furman, the court said:

"We come, then, to the question as to whether the application of the statute is different because the business done was on the Fort Monroe Military Reservation. We do not think so. It would be an anomalous result, indeed, if a foreign corporation doing business in Virginia could not be sued in a federal court with respect to business done merely because it was done on federal territory; and we find nothing in the law which would lead to any such result. The land contained in the Reservation was ceded by the State of Virginia to the United States by the Act of March 1, 1821, which contained the following provision: '* * * that the said cession shall not be construed or taken so as to prevent the officers of the State from executing any process or discharging any legal functions within the jurisdiction or territory herein directed to be ceded.'

"If this provision means anything, it means that the laws of the State of Virginia with reference to the service of process run throughout the Reservation. This means, of course, not only

■ The company points out that in the *Knott Corporation* case the activity which took place within the federal enclave (operation of a guest hotel) was not restricted to military personnel, but was open to all visitors on the reservation, whereas in our case the company's activities on Malmstrom Air Force Base had no substantial impact outside the enclave. However, we fail to see the materiality of that factual distinction in determining whether the Montana long-arm rule should be applied here. Notwithstanding the isolation of the company's activities at Malstrom from the economic life of Montana, it was nevertheless transacting business "within this state," and rendering services and furnishing materials "in this state," to employ the terms of Montana Rule 4B(1).

What is said above also requires rejection of the company's contention that, because its activities occurred, for the most part, within the federal enclosure, they may not be taken into account in determining whether it had the minimum contacts with Montana requisite to meet the "fair play and substantial justice" test of International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.

In presenting its "minimum contacts" argument, the company cites Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, in which the court indicated that the activities within a state which qualify as "contacts" for this purpose must be of a kind which show that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Swanson Painting Company did purposefully avail itself of the privilege of conducting activities within Montana, notwithstanding the fact that such activities occurred mostly within the federal enclave. It likewise invoked the benefits and protection of Montana's laws, for within the enclave, state judicial process was available, and without the enclave, it employed local workmen and registered the job at the union's office in Great Falls. But, more than this, we do not believe that the above-quoted language in Hanson v. Denckla was intended to deal with a federal enclave problem such as we have here, and such as was not present in that case.

We conclude that the Montana district court acquired personal jurisdiction over Swanson Painting Company.

In contending that the Montana district court did not have venue in this action, Swanson Painting Company refers to 28 U.S.C. § 1391(b), (1964), as it existed prior to November 2, 1966. As it then read, section 1391(b) provided that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law. The company correctly points out that it is not a resident of Montana. See 28 U.S.C. § 1391(c). It also asserts that the "otherwise provided by law" language of section 1391(b) is inapplicable here because there is no other pertinent venue statute.

■ In making this assertion, the company directs its attention to section 301(c) of the Act, pointing out that this venue provision pertains only to labor organizations and does not include private persons or corporations. What the company overlooks, however, is that section 301(a) of the Act, stating that suits for violation of contracts between an employer and a labor organization "may be brought in any district court of the United States having jurisdiction of the parties * * *," is itself a venue statute, albeit subject to the limitations of section 301(c). Since, as we have held, the Montana district court had per-

that state officers may go upon the Reservation to serve process, but also that the state laws as amended from time to time will determine what acts on their part constitute service." (163 F.2d at 206)

sonal jurisdiction of the company, it also had venue in the action.

In any event, 28 U.S.C. § 1391(b) was amended on November 2, 1966, which was prior to the commencement of this action, so that venue exists not only in the judicial district where all the defendants reside, but also "in which the claim arose. * * *" (Supp. II, 1965–66). It is not disputed that this claim arose in Montana.

We hold that the Montana district court had venue as well as jurisdiction.

Affirmed.