Lemel SILAS, Plaintiff,

v.

PAROH STEAMSHIP COMPANY (Paroh Steamship Corporation), Defendant.

Louis L. BRIGHT, Plaintiff,

v.

WORLD CARRIERS, INC., Defendant.

Civ. A. Nos. 2463, 2452.

United States District Court
E. D. Virginia.
Norfolk Division.
Nov. 18, 1958.

Sidney H. Kelsey, Norfolk, Va., for plaintiff.

Seawell, Johnston, McCoy & Winston, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

In each of these cases instituted under the Jones Act, 46 U.S.C.A. § 688, default judgments have been entered in favor of the plaintiffs. Such process as was had was effected by service upon the Secretary of the Commonwealth of Virginia pursuant to § 13–217, Code of Virginia, 1950, as amended [1]. The defendants,

1. "§ 13–217. *Secretary of the Commonwealth as attorney for service of notice or process even if power of attorney not filed; manner and effect of service.*—1. If any corporation, company or society required under the provi-

although admittedly having received the required process from the Secretary of the Commonwealth, did nothing other than refer the matters to their insurance company. The latter addressed letters to the attorney for the plaintiffs stating, in substance, that the claims would be investigated and plaintiffs' attorney would be further advised within a short period of time. The letters also enclosed a proposed stipulation for an extension of time for answering, which stipulation was not signed by plaintiff or his attorney. The attorney for the plaintiffs did not answer the letters from the insurance company, and at no time expressly or impliedly agreed to any extended time for answering. Thereafter, several months elapsed [2] and neither the insurance company nor the defendants made any effort

sions of §§ 13–211 or 13–214 of this Code to appoint the Secretary of the Commonwealth as its agent as above provided shall do business in this State without having so appointed the Secretary of the Commonwealth its agent, it shall by doing such business in the State of Virginia be deemed to have thereby appointed the Secretary of the Commonwealth its true and lawful attorney *for the purposes hereinafter set forth.*

"2. When the Secretary of the Commonwealth has been constituted attorney for any such corporation, company or society by its failure to comply with the provisions of §§ 13–211 or 13–214 before doing business in this State, any lawful process against or notice to such corporation, company or society *in any action or proceeding against it growing out of such business* may be served on the Secretary of the Commonwealth, and doing such business in Virginia shall be a signification of its agreement that any such process or notice so served shall be of the same legal force and validity as if served upon it in the State of Virginia.

"3. Service of process against any corporation, company or society for which the Secretary of the Commonwealth has been constituted agent by virtue of the provisions of this section shall be made by leaving two copies of the process or notice, together with a fee of three dollars, in the office of the Secretary of the Commonwealth, together with an affidavit giving the latest known address of the defendant, and such service shall be sufficient if notice of such service and a copy of the process or notice are forthwith sent by registered mail, with return receipt requested, by the Secretary of the Commonwealth to the defendant at such latest known address. An affidavit of the Secretary of the Commonwealth showing compliance herewith shall be filed with the papers in the action or proceeding. The court in which the action or proceeding is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action. No judgment shall be entered against any such defendant so served under this section until at least twenty days have elapsed after process or notice has been served on the Secretary of the Commonwealth."

2. (a) In Silas, process was served on the Secretary of the Commonwealth on June 10, 1957, and apparently received by defendant on June 11, 1957. Application to the Clerk for entry of default and affidavit of failure to plead or otherwise defend pursuant to Rule 55, Federal Rules of Civil Procedure, 28 U.S.C.A., were filed on July 31, 1957. Motion for judgment by default was filed on August 2, 1957. Pursuant to notice to counsel of record the case was scheduled for pre-trial conference (along with many other cases) on August 6, 1957, and, the defendant not having appeared, a judgment order by default was entered on that date. On the same day the case was set for hearing as to damages for November 1, 1957, but thereafter continued at request of plaintiff's counsel to December 2, 1957, on which latter date the Court heard the evidence and rendered judgment against Paroh Steamship Company in the sum of $3,344. It was not until December 20, 1957, that defendant appeared specially and filed its motion to vacate the judgment.

(b) In Bright, process was served on May 31, 1957, upon the Secretary of the Commonwealth, and apparently received by defendant on the following day. Application to the Clerk for entry of default and affidavit of failure to plead or otherwise defend, pursuant to Rule 55, Federal Rules of Civil Procedure, were filed on July 31, 1957. Motion for judgment by default was filed on August 2, 1957. Pursuant to notice to counsel of record, the case was scheduled for pre-trial conference (along with many other cases) on August 6, 1957, and, the defendant not having appeared, a judgment order by default was entered on that date. On the same day the case was assigned for trial as to damages on No-

to contact the court or any local counsel to act in defendants' behalf. The cases were regularly set for hearing at pre-trial conferences with only plaintiffs' counsel appearing [3]. Following appropriate notations of default, the Court heard the evidence as to damages and entered judgments in favor of the plaintiffs.

· Essentially there are three questions for determination on defendants' motions to set aside and vacate the judgments— the defendants appearing specially for such purpose only:

(1) In the Silas case, the judgment is against Paroh Steamship *Company*, whereas the name of the true owner of the vessel on which plaintiff was a seaman is Paroh Steamship *Corporation*. Is the judgment void or may it now be corrected by the Court?

(2) In the Silas case, was the defendant, Paroh Steamship Corporation, "doing Business" in Virginia so as to permit the service of process upon the Secretary of the Commonwealth?

(3) In both the Silas and Bright cases, is it necessary for the cause of action to grow out of the business done in Virginia as a condition precedent to instituting an action against a foreign corporation "doing business" in Virginia, where service of process is made upon a state official designated by the state statute?

Stated otherwise, the defendants contend that the judgments are void as the Court lacked jurisdiction to enter same. In Silas,[4] the plaintiff seaman sustained his injuries in Philadelphia and was given medical treatment at Philadelphia and thereafter at the United States Public Health Service Hospital in Norfolk. In Bright, the plaintiff seaman was employed on the vessel at Norfolk on June 24, 1956. He was injured at Rotterdam, Holland, and received medical attention in Norfolk. In Bright, the defendant concedes that it was "doing business" in Virginia at the time of the service of process upon the Secretary of the Commonwealth.

■ The Court has entered an order, pursuant to Rule 60, Federal Rules of Civil Procedure, correcting the name of the judgment debtor in Silas so as to read Paroh Steamship *Corporation*, rather than Paroh Steamship *Company*. The process was received by Paroh Steamship Corporation at the address of its place of

---

vember 1, 1957, at which time the Court heard the evidence and entered judgment against World Carriers, Incorporated, in the sum of $4,500. It was not until December 20, 1957, that defendant appeared specially and filed its motion to vacate.

Counsel for plaintiff was interrogated by the Court, prior to the entry of these default judgments, as to whether any local attorney had communicated with him. Counsel advised the Court with respect to the communications from the claims representative of the insurance company. In the opinion of this Court, there is no obligation upon the Court to contact the insurance company urging it to secure local counsel to appear. If such is the duty of the Court, the docket, already badly congested, would never be relieved.

The letters from the claims representative of the insurance company were not actually exhibited to the Court by counsel for plaintiff; nor was such information requested. It appears that in Bright, the claims representative wrote three letters to plaintiff's attorney, same being dated June 5, 1957, September 30, 1957, and November 14, 1957. In Silas, three letters also were written, same being dated June 17, 1957, September 13, 1957, and October 30, 1957; none of the letters were acknowledged by plaintiffs or their attorney.

3. Some contention is made that notices of the pre-trial conferences were not sent to the defendant. Such action is not required as the defendant had not appeared or advised the court of any contemplated action.

4. This plaintiff, Silas, originally signed on defendant's vessel at Norfolk on February 8, 1955, and was discharged at Philadelphia on July 26, 1955. On the voyage wherein he sustained his injuries it is not contended that plaintiff signed on at any Virginia port. Each contract of employment is separate and, therefore, the record is devoid of any employment relationship "growing out of business" done in Virginia.

business. It is clear that this is a mere clerical error or misnomer which should be corrected. Anderson v. Brady, D.C., 6 F.R.D. 587.

Defendant, in Silas, contends that it was not "doing business" in Virginia at the time of the service of process on June 10, 1957. The record indicates that Paroh Steamship Corporation operated only one vessel, the S. S. Annioc, from the time it acquired same in February, 1951. Until April 20, 1957, she flew the American flag, although she was renamed Venitia on March 11, 1956. During 1952 the vessel visited the Port of Hampton Roads, Virginia, on three separate occasions; during 1955 on one occasion; during 1956 on one occasion; and during 1957 on two occasions, one of which was shortly after process had been served in this action. On these trips to Hampton Roads the vessel loaded cargo and purchased supplies. While the matter is not free from doubt, the pattern is sufficient to hold that, with a "one ship" corporation, business was being done in Virginia. On April 20, 1957, Paroh Steamship Corporation caused the title to the vessel to be changed to Sirius Compania Maritima Commercial, a Panamanian corporation, with the vessel flying a Liberian flag. Paroh Steamship Corporation owns all of the stock of Sirius Compania Maritima Commercial and Evans V. Demson, the President of Paroh Steamship Corporation, owns all of the stock of Paroh. Paroh remains the operating agent for the Panamanian corporation. Thus it follows that Demson, through his stock ownership of Paroh, solely controls the Panamanian corporation known as Sirius Compania Maritima Commercial. It is, of course, fundamental that a change of registry by an American owner to a foreign flag cannot be used as a device to avoid obligations incurred while under the American flag. The illusory shield affords no protection. Gerradin v. United Fruit Co., 2 Cir., 60 F.2d 927, certiorari denied 287 U.S. 642, 53 S.Ct. 92, 77 L.Ed. 556; Armit v. Loveland, 3 Cir., 115 F. 2d 308, 314; Kyriakos v. Polemis, D.C.,

63 F.Supp. 19, affirmed Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132; Federazione Italiana Dei Consorzi Agrari v. Mandask, D.C., 158 F.Supp. 107. Even if it be assumed that the transfer of registry was not intended to defeat plaintiff's rights, yet here we have a situation in which an American corporation was "doing business" in Virginia until April 20, 1957, after which its solely owned foreign corporation continued to do business in this state, with no change of management. To prevent a failure of justice, this Court concludes that Paroh Steamship Corporation was still "doing business" in Virginia at the time process was served. Heredia v. Davies, 4 Cir., 12 F.2d 500, 501. Whether it was "doing business" sufficient to make it amenable to service of process in personam for a cause of action not "growing out" of the business done in Virginia presents another question hereinafter discussed.

The crucial question in these cases concerns the interpretation of the Virginia statute, § 13–217, Code of Virginia, 1950, as related to service of process upon the statutory agent in Jones Act cases where the cause of action arises outside of Virginia. It will be noted that the Virginia statute does not refer to a "cause of action arising" in Virginia—more specifically it states that the statutory agent may be served where the "corporation, company or society" does business within the state *in any action or proceeding against it growing out of such business.*"

It is well settled that the Jones Act is a remedial statute which must be liberally construed. The rights thereunder to maintain an action at law for damages "growing out of" the seaman's contract of employment. In Bright, the contract of employment was entered into in Virginia where the seaman signed aboard the vessel owned by the defendant, World Carriers, Incorporated, which latter was admittedly doing business in Virginia at the time the employment contract was entered into and at the time process was served. Even though the alleged negligence took place in Rotterdam,

Holland, the cause of action "grew out of" business done in Virginia and the in personam judgment is good. The last sentence of 46 U.S.C.A. § 688, stating that "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located" has been construed as a venue statute and the use of the word "jurisdiction" is inapt. Panama R. Co. v. Johnson, 264 U.S. 375, 384, 385, 44 S.Ct. 391, 68 L.Ed. 748; Branic v. Wheeling Steel Corp., 3 Cir., 152 F.2d 887, certiorari denied 327 U.S. 801, 66 S.Ct. 902, 90 L.Ed. 1026.

The Silas case, considered from the standpoint of the Virginia statute providing for service upon the statutory agent in proceedings against the defendant "growing out of *such* business", must be treated differently. When plaintiff was discharged in Philadelphia on July 26, 1955, he was then free to sign aboard any other vessel. He allegedly sustained his injuries on July 30, 1955, and apparently he signed new articles at Philadelphia. His new contract of employment at the latter port could not be construed as "growing out of such business" done by the defendant in Virginia. For reasons hereinafter indicated this Court is of the opinion that Paroh Steamship Corporation, although doing business in Virginia as of the date of the service of process, was not amenable to process upon the statutory agent under the circumstances herein, as the action or proceeding did not "grow out of such business" done in Virginia.

The problem is admittedly complex and no Virginia case is directly in point. The precise question was mentioned, but not discussed at length, in an address by Chief Judge Sobeloff at the 1957 Frank Irvine Lecture delivered at the Cornell Law School on May 3, 1957. See: 43 Cornell L. Q. 196. The area of inquiry is, however, considered in Eure v. Morgan Jones & Co., 195 Va. 678, 79 S.E.2d 862, and Knott Corporation v. Furman, 4 Cir., 163 F.2d 199, certiorari denied 332 U.S. 809, 68 S.Ct. 111, 92 L.Ed. 387, the latter

being an opinion by the late Chief Judge Parker.

In Eure, the Supreme Court of Appeals of Virginia held that a foreign corporation which had done business in Virginia without qualifying, and which subsequently ceased doing business in this state, would be subject to the in personam jurisdiction of the courts of Virginia if service was made upon the Secretary of the Commonwealth predicated upon an action arising out of business done within the state. It was said:

"When a foreign corporation engages in the privilege of doing business in Virginia, it enjoys the benefits and protection of the laws of this Commonwealth. It thereby subjects itself to the jurisdiction of the courts of this state for the purpose of litigating liabilities created during its stay here." [195 Va. 678, 79 S.E.2d 868]

The foregoing language, standing alone, would indicate that only when the liability is created in Virginia may service be made upon the Secretary of the Commonwealth. But the statute refers to actions or proceedings "growing out of such business" and, in Bright, the right to maintain an action under the Jones Act must grow out of the employment contract between the seaman and the vessel's owners or operators. In Silas, no such situation exists.

Knott Corporation v. Furman, supra, deals at length with the issue presented. It is true that the cause of action there arose in Virginia, and the language of Judge Parker may be viewed as dictum but, if so, it is nevertheless a view which cannot be readily disregarded. Quoted with approval is 23 Am.Jur., p. 512, as follows:

"Upon the theory of implied consent, by entering the state and engaging in business therein without first qualifying under the valid local laws, which provide for service on a statutory agent, or complying with a lawful requirement that it designate some person of its own selection or a

prescribed state official as its agent to receive service of process in suits against it, such a corporation may be deemed to have consented that jurisdiction of the local courts over it while thus engaged may be acquired through service upon its agent in charge of such business, whom it is deemed to have designated for the purpose, or upon the prescribed state official as the case may be, *in all suits arising out of such business, although not in suits on foreign transitory causes of action unconnected with the corporation's business in the state, where jurisdiction is sought to be rested on service made upon a state officer or other person whose authority to receive process is derived exclusively from statute, unaided by any representative relation to the corporation."* (Emphasis supplied).

At three other places in the opinion, Judge Parker explicitly points out that there is a distinction between express and implied consent to suit and, as to foreign transitory actions unconnected with the business done in Virginia, it is said (163 F.2d at page 205):

" * * * not only is there no waiver of venue under the federal statute, but there is also no jurisdiction acquired under the state statute."

We note, therefore, that a distinction is drawn where jurisdiction is based solely upon the statute, with no connection with the business done in Virginia and no representative in Virginia upon whom process may be served, and those cases in which the activities in the state are deemed to be sufficiently substantial to permit jurisdiction predicated upon a general course of business to reach any cause of action, no matter where it arose. See note in 43 Cornell L. Q. 196, supra. Where the defendant corporation has actually designated an agent upon whom process may be served, or where the activities are so substantial that a general course of business is being conducted and representatives are present within the

state upon whom service may be had, it has been held that "actual consent" to be sued in the particular state has been granted. Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. But service upon state officials designated by statute under the "implied consent" rule has been cautiously scrutinized. Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39.

In Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, the United States Supreme Court dealt with the problem as to whether process served upon an admitted agent of the corporation, for a cause of action unrelated to business done in Ohio and arising elsewhere, violated the "due process" clause of the Fourteenth Amendment. After discussing and applying the tests laid down in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the court held that there was no requirement of federal due process "that either *prohibits* Ohio from opening its courts to the cause of action here presented (a foreign transitory action) or *compels* Ohio to do so." [342 U.S. 437, 72 S.Ct. 418] Further, Perkins stands for the principle that if the teachings in International Shoe are sufficiently satisfied, a foreign corporation may be subject to suit upon a foreign transitory cause of action entirely apart from activities within the state. Missouri, K. & T. R. Co. v. Reynolds, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915; Barrow Steamship Co. v. Kane, 170 U.S. 100, 108, 18 S.Ct. 526, 42 L.Ed. 964; Baltimore & O. Railroad Co. v. Harris, 12 Wall. 65, 20 L.Ed. 354.

In Silas, while the amount and nature of defendant's activity may have been sufficient to hold that defendant was "doing business within the state" to subject it to service of process in an action "growing out of such business", it is not sufficiently substantial and of such a nature that the defendant corporation was "present in Virginia for all purposes", and to hold that in personam jurisdiction exists in this case would violate federal

due process in light of the language in the Virginia statute. Pennoyer v. Neff, 95 U.S. 714, 726–727, 24 L.Ed. 565; Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456. In a more recent pronouncement discussing the trend of expanding personal jurisdiction over non-residents, after referring to McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Supreme Court, in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, said:

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective states. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

Plaintiff in Silas argues that his proceeding includes a cause of action for maintenance, which he states arose in Virginia after plaintiff was released from the United States Public Health Service Hospital at Norfolk and, such being the case, jurisdiction existing for one phase of the case carries with it the necessary jurisdiction for all phases. The facts are that plaintiff was first treated for his injuries in Philadelphia, but later went to Norfolk as this was his home. Whether he received some maintenance payments in Virginia is immaterial as such an action for maintenance cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Virginia. Hanson v. Denckla, supra, 357 U.S. at page 252, 78 S.Ct. 1228, where the re-

mittance of trust income by a Delaware trustee to the settlor in Florida was held to be insufficient to indicate that the trustee purposefully availed itself of the privilege of conducting activities within the forum state. Moreover, it is well settled that the seaman's rights to maintenance and cure arise when the seaman signs articles and continues until he has received his discharge. Gilmore & Black, The Law of Admiralty, p. 257. Such rights to maintenance and cure have a scope as broad as the employment of the seaman, and the duty must have arisen before termination of the voyage and wage relationship. Benedict on Admiralty, 6th Ed., Vol. 1, pp. 61, 253, 254. To support jurisdiction in this case merely because the plaintiff lived in Virginia, and it was more convenient for him to receive out-patient treatment in his home area, would indeed be exaggerating the doctrine of "growing out of such business" done in Virginia.

Holding in Silas that the Court lacked jurisdiction to enter the default judgment, as subsequently amended naming Paroh Steamship Corporation as defendant, the judgments of December 2, 1957, and November 17, 1958, will be vacated and the action dismissed upon presentation of an appropriate order prepared by counsel for defendant.

Holding in Bright that a proceeding under the Jones Act is a necessary corollary to the employment contract entered into within the State of Virginia, and the plaintiff's right of action grew out of such business done in Virginia, the defendant's motion to vacate and set aside the judgment entered on November 1, 1957, will be denied and counsel for plaintiff will prepare an order to this effect.

The joint memorandum filed herein will be adopted by the Court in lieu of specific findings of fact and conclusions of law. The two cases have not been consolidated by any order of court, but such action will be taken upon request of either counsel as the issues are substantially similar.